42 So.2d 821
**HENDERSON BAKER LUMBER CO. v. HEADLEY et al.**
**2 Div. 254.**

Supreme Court of Alabama.
Nov. 25, 1949.

Adams & Gillmore, of Grove Hill, and Rushton, Stakely & Johnston, of Montgomery, for appellant.

108

Scott & Porter, of Chatom, and Johnston, McCall & Johnston, of Mobile, for appellees.

SIMPSON, Justice.

This case was here before on questions of pleading and is reported as Henderson Baker Lumber Co. v. Headley et al., 247 Ala. 681, 26 So.2d 81. The present appeal is by Henderson Baker Lumber Company, hereinafter to be referred to as Baker, from a final decree denying relief under its bill as amended and granting defendant Headley relief as prayed for in his cross bill as amended.

Baker's bill sought injunctive relief against Headley and Miller and Company, Inc., from further cutting of timber on lands allegedly owned by Baker and the removal of logs stacked along the highway, which were in part the product of such cutting. The Miller Company was purchaser from Headley of such timber.

The respective claims and equities asserted in the bill and cross bill, as well as the governing law, were clearly exposited in the opinion of Chief Justice Gardner on the first appeal, but for the convenience of the reader we will indulge in some repetition here. The over-all challenge to the correctness of the decree below concerns the relief granted under the cross bill, so we will first address consideration to it.

The substance of Headley's cross bill, after denying the contentions made by

Baker in the original bill, as amended, exhibits the following: A claim by Headley to full ownership of the lands in suit under a resulting trust whereby Baker advanced by way of a loan to him certain sums of money with which to purchase the said lands, title to same being taken in the name of the Baker Company to secure the money so advanced until it should be repaid by Headley in accordance with an agreement made between the parties in 1937. The import of the agreement, as set forth in his cross bill, was that in the year 1937 the plaintiff corporation, through its president, Henderson Baker, proposed to Headley that if he would agree to log in part the plaintiff's Myrtlewood sawmill, plaintiff would advance all sums necessary for the purchase of timber and lands as requested by Headley, the title to be taken in the name of the plaintiff as security for the purchase price thus advanced, and that a percentage of all the timber cut in the form of the stumpage value thereof would be credited against such purchase price, and when all of said funds had been repaid out of the stumpage take-outs, the plaintiff corporation would by appropriate instrument reconvey the lands to Headley in fee simple; in compliance with this understanding and agreement, the lands described were so purchased by Headley with the money thus loaned to him, and the title thereto taken in the name of plaintiff corporation as security for such advances; that Headley fully complied with this agreement, has fully repaid the amount of his indebtedness owing to Baker, has a full and exclusive right to the possession and enjoyment of said lands and in equity is entitled to specific performance by having the plaintiff corporation convey to him the fee simple title as was agreed in the 1937 agreement.

The cross bill further alleged that in the particular territory where the property is located, it was a general custom among sawmill operators and log contractors (Headley being a log contractor) for the mill operators to operate in the manner so alleged and to advance the costs of timber and land, the title to be taken as security for such advances in the name of the sawmill company, and that when the cost of the purchase price had been fully paid and the debt satisfied by logs or cash, the operators then would reconvey the remaining land and timber to the logging contractor by appropriate instrument; and that Headley's agreement with the plaintiff was pursuant to this general logging and sawmill custom.

The cross bill further alleged that from time to time when the described lands were so purchased, Headley was put in possession thereof by the vendor and the plaintiff corporation; that the obligation on his part to log in part the plaintiff's mill consisted of the mutual agreement between said parties that the purchase price of said lands would be repaid Baker by defendant in logs at the market price; that defendant did log said mill as agreed until such time as he had repaid the total purchase price of all of said lands, thereby satisfying his indebtedness to the plaintiff; that defendant bought logs from other persons, furnishing said logs to the plaintiff's mill in order to pay off the said indebtedness which had been advanced to him for the purchase of said lands; that he sold lumber to the plaintiff to be applied to said purchase price and erected a sawmill on or near said lands and cut certain of the timber off of said lands at said mill with full knowledge and approval of plaintiff, and that plaintiff, through its president, had full knowledge that the defendant was claiming the stated equity in and right to said lands under the terms of the agreement aforesaid.

The original bill, as a basis for the injunctive relief prayed for, set up an entirely different state of facts, in direct contradiction to the claims set forth in the cross bill, and alleged the following to have been the agreement of the parties: There was no loan of any money to Headley and no continuing binding obligation on his part to repay the money so advanced; that the stumpage take-outs which Headley had contended had repaid his indebtedness to plaintiff and which had been credited on the books of the plaintiff in Headley's name against the advances made were to repay it for the purchase price of

the land and timber, and that as an incentive to Headley to stimulate his continued delivery of logs and to insure protection of his recommendations as to the purchase of said timber and lands, Baker made known to Headley that the corporation would maintain on its books an account of the transactions and would enter thereon as indebtednesses all sums paid by Baker as purchase price for these lands, together with interest thereon, taxes, and any other expenses incurred or paid by Baker attributable to the purchase and ownership of the property; that it did enter these credits on said account and that if and when the credits so entered in said account should constitute a sum equal to all of the recorded indebtedness in the account, then, thereafter, Headley would be paid for logs from said lands at current prices, without any further take-outs, and that there was no obligation on the part of Headley to pay any deficiency should the take-outs prove inadequate to offset the costs of the land and timber.

Since relief was denied under the original bill, and we are in accord with that conclusion, we will elaborate no further on the contention made by the original bill and will proceed with a consideration of the challenge made to the decree granting relief under the cross bill and sustaining Headley's claim.

The controlling principles of law applicable to the cross bill and the proven facts in support thereof can best be stated by quoting the following from the opinion on the first appeal:

"* * * Speaking of this character of relief, the Court in O'Rear v. O'Rear, 220 Ala. 85, 123 So. 895, 896, said: 'When one person makes a loan to another with which to purchase lands, and by mutual agreement a deed is made directly from the vendor to the lender as security for the loan, the transaction partakes of the nature both of a resulting trust and a mortgage. A resulting trust, because the money loaned becomes that of the borrower, and the title acquired with his money is taken in the name of another; a mortgage, because it is given as security for the debt due from lender to borrower.'

"This decision calls attention to the full discussion of this equitable principle to be found in Pollak v. Millsap, 219 Ala. 273, 122 So. 16, 65 A.L.R. 110, where our former decisions were reviewed and distinguished. Still more recent decisions reaffirm the doctrine there recognized. Gunter v. Jones, 244 Ala. 251, 13 So.2d 51; Leonard v. Duncan, 245 Ala. 320, 16 So. 2d 879. These authorities are to the effect that to invoke this equitable principle and to have a deed absolute in form declared a mortgage, there must be a continuing, binding debt from the mortgagor to the mortgagee to uphold it—a debt in its fullest sense. When there is no debt there can be no mortgage, and to establish a resulting trust the one claiming the trust must have furnished the funds for the purchase. The theory is that the money borrowed is in fact the money of the borrower, and the purchase therefore made with his own funds.

* * * * * *

"We are * * * of the opinion that the cross-bill is to be properly construed as disclosing a loan of money by Baker to Headley with the understanding and agreement of the parties that the lands would be purchased and paid for by the funds so lent, with the deed taken to Baker to be held as security for the purchase price. So viewing the cross-bill, the relation existing between Baker and Headley was that of mortgagor and mortgagee, and the relief to which Headley is entitled would be that growing out of the exercise of his equity of redemption. * * *" 247 Ala. at pages 687–688, 26 So.2d at page 86.

On coming in of the proof the evidence was ample to sustain Headley's claim; so applying these principles, after a studious consideration of the voluminous record before us, we have become fully persuaded that the decree must be affirmed. The impartial mind could not but be impressed that the evidence strongly preponderated to sustain the cross bill. In addition to the testimony of Headley's witnesses, the correspondence between Baker and Headley, as well as Baker's own records, as we interpret them, tend strongly to corroborate

Headley's contention of what was the contract between the parties. His whole course of dealings with Baker and Baker's attitude in regard thereto, including payment by Headley of considerable of his own money for taxes on the lands and furnishing some logs to the mill from timber cut from his own and other lands in order to liquidate his debt to Baker, all tend to support his claim that the money advanced to him was a continuing binding debt on his part, which he was attempting to pay in order to acquire the title to the lands.

This is our own view of the cold record and an affirmance would be due had not the evidence been before the court in open court. Since the evidence was taken ore tenus on this strictly controverted issue of fact, the usual presumption attending the trial court's finding makes it all more certain that the decree must be affirmed. Ala.Dig., Appeal and Error, ☞ 1009(1–2).

The essence of the court's finding on this issue is thus stated:

"The agreement entered into between Headley and Henderson Baker Lumber Company was one for the mutual benefit of each party. Headley had been logging for Henderson Baker Lumber Company for several years, the company knew of his ability to log, and it was the desire of both parties to this agreement to acquire timber for Headley to log and for Henderson Baker Lumber Company to run through its sawmill. This arrangement went on for several years and as a result of it the land described in the pleading was acquired. It is the opinion of the Court that the surplus left is the property of Headley, he having paid to Henderson Baker Lumber Company all of the money that the company advanced for the purchase of it, the cost of surveying, the abstract charges, the taxes and the fees of the attorneys for passing on the title. All of this was charged to Headley and he has repaid it to the company. It is the opinion of the Court that the Complainant is holding this in trust for Headley." R., p. 345.

This finding is affirmed and is conclusive of the appeal and under the allegations of the cross bill and the proof tendered ·to support it, the decree could well have ended here, with specific performance awarded. The trial court, however, went beyond the issue tendered and decreed certain rights of Baker to continue to receive the timber from these lands. There are several assignments of error which challenge this latter phase of the decree, but since this part of the decree was aside the strict issue presented, we must hold the contentions made by these assignments to be untenable. Since the evidence supported the above-quoted finding of the trial court and entitled Headley to the entire property as so found, the latter phase of the decree being favorable and without prejudice to Baker cannot be made the basis of error here. No further consideration, therefore, is due to be accorded these assignments.

Affirmed.

BROWN, FOSTER, LAWSON, and STAKELY, JJ., concur.