LARKINS VS RHODES.

*As to co-partnerships for the purchase of lands.*
*As to resulting trusts.*

1. Chancery will not consider the question of an alleged co-partnership in the purchase of lands, where neither the allegations or proofs in the cause, recognise the existence of any agreement in writing in relation to such co-partnership.

2. Whether money paid by one in pursuance of an alleged oral agreement, to purchase lands in co-partnership, would authorise relief in Chancery, as a resulting trust, must depend upon the certainty of the evidence adduced in the cause: and though in this country, parol evidence is admissible to raise a resulting trust, yet it is to be received with caution, and must establish the cause with clearness and certainty.

3. So where on a bill filed, charging a co-partnership in the purchase of lands, between complainant and the defendant, and the payment of money by the former for that object—and there were neither allegations or proofs of an agreement in writing;—and the answer denied the co-partnership, and admitted the receipt of money from the complainant, but averred that it was received to pay off a debt owing from him to respondent, to which the money so received had been applied, it was held—

First—That a denial by respondent, that the money received was to be invested in lands, for the joint benefit of the parties, put the complainant on proof of that fact.

Secondly—That there being no proof of an agreement in writing, the case could not be considered, on the ground of a co-partnership—but was so far within the statute of frauds,

Thirdly—That the allegations of a payment to the complainant, of money, to be invested on the joint account of the parties, not being sustained by proof, the case was not within the principle authorising a relief in Chancery.

In error to a decree of the Circuit Court of Jackson county, exercising Chancery jurisdiction.

This was the case of a bill in equity, filed by John Larkins against Henry Rhodes.

It alleged, that some time previous to the opening of the land office, for the sale of the public domain in Jackson county, orator and defendant entered into a co-partnership, for the purpose of entering lands; and to effect which, they proceeded to survey and examine certain lands, and accordingly, selected five half quarter sections, which they agreed to enter jointly. That orator then furnished the defendant with the sum of three hundred and eight dollars, to carry out their agreement, which was more than a just proportion of funds to be furnished by orator: but the overplus was to have been applied to the purpose of entering other lands in partnership, as aforesaid. That Rhodes, after receiving the said funds of orator, repaired to Huntsville, and in violation of his agreement, that said lands were to be entered jointly, in fact made the entries in his own name alone—which lands, so entered, the bill set forth particularly. It was also stated, that a portion of the said lands so entered, was cleared, and that Rhodes had rented part of such improved land, and cultivated other portions, without having accounted to orator, although he had been frequently requested to do so. The bill

with the usual allegations, prayed a division of the lands, and that the same, with a moiety of rents and profits, should be decreed to him.

The answer of Rhodes, in positive terms, denied having entered into a co-partnership with the complainant, for the object of jointly purchasing any lands, whatever. It alleged that respondent, had assisted complainant in the survey of certain lands, which complainant desired to enter on his own account; but stated that these were not part of the . lands described in complainant's bill. The answer also denied, that the funds as alleged in the bill, had been supplied by complainant, to respondent, in order to make any such joint entries of lands; but averred that the said lands had been purchased by respondent, with his own funds, and for his exclusive benefit. Respondent admitted that within the year eighteen hundred and thirty, he had received of complainant, the sum of three hundred and eight dollars; but that it was paid to him in liquidation of certain claims; (which he described,) held against complainant at that time. The answer after sundry immaterial statements, closed with a demurrer, and the usual conclusion.

The case was heard upon the bill, answer, exhibits, and voluminious testimony, (the particulars of which, are at length set out in the opinion of this Court;) when the Chancellor below dismissed the bill, to revise which decree the complainant sued out a writ of error.

The cause was argued in this Court by *S. Parsons* for the plaintiff in error, and by *M'Clung*, contra.

GOLDTHWAITE, J.—On the thirtieth of August, eighteen hundred and thirty-three, the complainant Larkins, exhibited his bill in the Circuit Court of Jackson county, against the defendant Rhodes—Charging, that a short time before the land office was opened, for the entry of lands, situate in Jackson county, he entered into co-partnership with Rhodes, in entering lands in said county, and after the parties had examined and surveyed several tracts, he, the complainant furnished Rhodes with three hundred and eight dollars, which was to be used in purchasing on joint account, five half quarter sections; that Rhodes was to supply one half of the necessary funds, for this purpose, and as the said sum furnished by complainant, was more than one half the cost, the balance was to be applied to the entry of other lands, to be owned in the same manner.

The complainant alleges that Rhodes made the entries with the money thus furnished by complainant, and a like sum supplied by himself—that he has taken the patents in his own name, and refuses in any manner to recognize the complainant as having any right or interest in the lands so entered; and he prays a division of the lands, that an account of the rents and profits may be taken, and for general relief.

The respondent denies all the allegations of the complainant, relative to a co-partnership of any description, and also denies the receipt of any money from the complainant, for the purpose of entering lands on joint account. He admits the receipt of the sum of money named in the bill, but insists it

was paid to him on account of debts which were due from complainant to respondent; which are stated to be as follows:

No. 1. A balance due on a note, due 1st March, 1826, of        $66 40

2. A note due 10th March, 1830, for   275

3. A debt for money lent to pay for land of Ely Monks,       101 25

4. A note of Jonathan Martin, due 18th February, 1830, which complainant had promised to pay to respondent,       50 00

The respondent admits that he received the sum charged in the bill, in the manner following, that two hundred dollars were sent to him by one William Larkins; which was applied—

1. To the payment of No. 1,      $66 40

2. To the payment of No. 2,      101 25

3. To the payment of No 4, in part,   32 35

                          200 00

The remaining one hundred and eight dollars, were paid to him by complainant in person, and applied,

1. To the payment of the balance due on No. 4,      $19 66

2. The balance of the sum was credited on No. 2,      88 34—108 00

                         308 00

Respondent also alleges that he sued complainant on the note, number two, in Tennessee, and recovered a judgment against him for the balance

due, and sets forth as an exhibit to his answer, an exemplification of that judgment. On a reference to this exhibit, it appears that judgment was rendered in the cause, two days previous to the exhibition of complainants bill. This judgment was appealed from and confirmed in the appellate Court on the fifteenth of January, eighteen hundred and thirty-four.

A number of witnesses were examined on interrogatories, whose testimony, so far as is considered material, will be hereafter examined; and the cause was heard on the bill, answer, exhibits and testimony, in the Court below, which dismissed the bill, and decreed costs against the complainant; which decree he now seeks to reverse by writ of error.

The facts disclosed by the bill, present the complainant's equity, on his own statement, in two aspects:

1st. A right to one half of the lands alledged to have been entered by respondent by virtue of the co-partnership-

2d. An interest in the same to the amount of the funds furnished by him to respondent, and actually invested in lands, by reason of which a trust would result to the complainant.—*Botsford vs Burr*.†

†2 John: Ch. 405.

The evidence taken on behalf of the complainant, though strong to induce the belief that a co-partnership actually existed between the parties, in relation to the entry of some lands, entirely fails to make out any agreement in writing. Indeed it is not contended that any written agreement ever existed, evincing a co-partnership. So far there-

fore as the cause is to be considered in this aspect, it may at once be dismissed as clearly within the statute of frauds.

Considering the case as one of a resulting trust, by reason of the funds alleged to have been supplied by the complainant, which were used in the entry of lands, as he asserts, it becomes essential to ascertain if the answer of respondent admits the charges of the bill, and sets up new matter in avoidance, which it is necessary to support by evidence; or whether it substantially denies all the allegations, and thus forces the complainant to proof.

The bill charges, the advance of the sum of money named, with a particular and specific object, to wit, its investment in lands; and the charge is clearly divisible into two parts. The answer admits the advance of money, or rather the receipt of it; but entirely denies the fact charged, that it was to be invested in lands in joint account, and insists that it was received as a payment.

If the answer had admitted the advance of money, but denied its investment, it is conceived to be clear, that it would lie with the complainant, to establish the latter fact; and the distinction, if one exists, is not perceived between that case, and the one under consideration.—See *Hart vs Ten Eyck.* [*2 John. C. 62.]

It may then be assumed that the *onus* of proving the case rests on the complainant; but before entering on the examination of the evidence, it may be premised that the complainant charges, that the fact, of the payment or advance of the one hundred and eight dollars, part of the three hundred and eight, is alone within the knowledge of the res-

5 P. 26

pondent, and that he has no means to prove it, unless it be admitted.

Ely Monks, a witness for the complainant, states that respondent had agreed to enter *witness'* land, but afterwards declined doing so, giving as a reason, that complainant and himself, were about to enter lands in co-partnership; and then said, witness could get the money from complainant, who had a plenty, and that he himself intended to get some from him. Complainant directed respondent to leave money for the *Duncan* land with the Register, and he would be responsible for respondent's half, if lost.

William Larkins states, that soon after the preference rights, in Jackson county, ceased by limitation, (sometime in eighteen hundred and thirty,) the complainant gave him two hundred dollars, to take to the respondent—one hundred and fifty of which was land office money, the other fifty was not. The money was accompanied with a note to John Acklin, requesting him to take it and furnish respondent with land office money. This he gave to respondent, who afterwards informed him that Acklin changed the money; but that he had to borrow from some friends, to make out his entries.

James Hall states that he travelled with respondent from Jackson county to Huntsville, and was informed by him that he was going there to enter lands; that the money he got from Larkins, was of Yeatman and Woods' bank, and that complainant had told him to go to John Acklin, who would change it for him. Witness went to Acklin's with

respondent, who handed him some money or papers, and then with the money he received from Acklin, went to the land office, and entered land. Respondent told him, he then left at the land office one hundred dollars, to enter one of the tracts of land now in controversy, designated as Duncan's place.

Dabney Lipscomb states, that from hearing the parties converse, about the time of the entry of lands, he believes it was distinctly understood between them, to what entries, the money advanced by the complainant, was to be applied. He also states that he understood, (from whom, he does not inform us,) complainant had furnished respondent with money, to enter lands in partnership.

Peter Cartwright was present at the house of the complainant, at a time when the respondent was there, and on something being said about a settlement by complainant, the respondent produced some papers, and as witness thought, commenced calculating interest.

Something was named about land, of which complainant wanted a part—on this respondent became very angry and would not settle, and said complainant should not have any of the land, for he had the advantage of him, and he intended to keep it. Witness was called on by complainant to notice what respondent said.

This is all the evidence in the case, which has any bearing on the advance of money by the complainant to the respondent, and it is not very satisfactory to establish *the intention* of the respondent,

to use the money advanced by complainant, in the entry of land on joint account.

The testimony of Monks, is not in any way inconsistent with the answer, so far as the receipt of the money is at issue; nor does the evidence given by William Larkins, tend in the least to disprove the answer. The money which he carried to respondent, might have been a payment to him, on account of what was previously due. Hall's testimony is also not at variance with the answer.

It must however be confessed, that the full proof, which is made, of an agreement between the parties, to enter *some lands* in co-partnership, which is in direct contradiction of the answer, has an influence on this case, which it is difficult to resist; and this, when coupled with the declaration, made in the presence of Cartwright, and the conversations held with the complainant, in the presence of *Lipscomb*, would induce the conclusion, that the money, or at least two hundred dollars of it, had been furnished by the complainant to the respondent, under the expectation that it would be laid out in lands, for their joint account; but if this was the result to which the Court could arrive, no relief could be extended, because none of the testimony in the cause, identifies or describes the lands which were purchased, at the time the entry was made by the respondent, and spoken of by the witness Hall. On the complainants own shewing, then, there could be no decree in his favor; but much doubt is removed from this case, by the testimony of the witnesses, who have been examined for the respondent.

The deposition of James Rhodes, William Rhodes, George Griffin, and Charles Blackwell, were objected to in the Court below, without pointing out any specific objection to the same, and it is here contended, that the commissioner's certificate is irregular, because it shews the commission to have been executed, on the twenty-eighth of February, when the signature was affixed, and dated the twenty-third of that month. Without deciding that an objection can be taken in this general mode, to depositions, when offered on the final hearing of a cause, we are all of opinion, that the one taken can have no effect. The latter date, if repugnant with the previous one, would be rejected, as of no consequence, whatever; as it is not required that the certificate of the commissioner, should be dated: and the Court must intend that here the error is a mere slip of the pen, if in truth it does not derive its existence from the individual, who transcribed the record in this case.

So far as the testimony given by the complainant's witness, Eli Monks, has any bearing in the cause, he is completely discredited by Griffin and Blackwell, who depose that they have repeatedly heard him assert that he knew nothing in relation to this controversy.

James Rhodes supports the answer of respondent, about the loan of one hundred dollars, to enter Monk's land. He also proves that complainant borrowed from respondent, two hundred and seventy-five dollars, in February eighteen hundred and thirty, which were to be re-paid *for respondent to enter lands.* He also proves a fact wholly incon-

sistent with any idea that the entry of Duncan's land, spoken of by Monks and Hall, was intended by the parties as a partnership transaction, as the complainant offered to give respondent two hundred and fifty dollars for the tract, provided he could swap it for another place named.

William Rhodes also says he was present when respondent was going to survey the Duncan place, after he had entered it, and complainant said he had made a good entry, and intimated a willingness to trade for it. This witness fully confirms the answer as to the loan of two hundred and seventy-five dollars, for which note, number two, was given. This sum, respondent told complainant, he must have to enter land with, and complainant declared it should be repaid, even if he had to go in bank for it. About the time of entering land, respondent applied to complainant to repay him, and was informed he did not then have it, but he would get it and pay him in a few days. The payment sent by William Larkins, was made in the presence of this witness, who was sent by respondent to complainant for more money, but not finding him at home, he left a message to that effect with his family.

This evidence on the part of the respondent, if it does not divest the case of difficulty, certainly so far confirms and supports the answer, so as to render it sufficiently certain, that the money sent by complainant to respondent, was not laid out in lands on joint account, but was applied to the payment of the demands then held by respondent against complainant.

The Court has somewhat unnecessarily stated

LARKINS *vs* RHODES.

the evidence in this case at length, but its object has been solely to show, that the case does not come within the principles which govern Courts of Equity, in enforcing a resulting trust.   In the English cases, parol evidence is not admitted to establish a resulting trust against the answer.*                Sug. on

Vend. 616

In this country, although parol evidence is ad-and cases missible to raise a resulting trust, yet it is always cited. received with great caution; and to entitle a complainant to a decree, the proofs should make the †1 John. case clear beyond all reasonable doubt.—*Boyd vs* C. 586.

‡5 John.

*McLean*†—*Steere vs Steere*‡—                              C. 1.

The decree of the Court below must be affirmed Sug. on Vend. 619 with costs.                                              620.