# Holt *v.* Johnson, *et al.* and Holt, *et al. v.* McEvoy, *et al.*

### Bill to Enforce Resulting Trust.

(Decided April 21, 1910.   52 South. 323.)

1. *Trusts; Resulting Trusts; Evidence.*—To establish a resulting trust, the evidence must be strong and unequivocal, and of such a nature as to disclose the exact rights and relations of parties.

2. *Same.*—In an action against the heirs of a decedent to establish a resulting trust based on the fact that funds belonging to the plaintiff went into property purchased by decedent in her own name, the evidence examined and held insufficient to establish such trust.

3. *Same.*—A resulting trust will not be declared against the heirs of a decedent merely for the reason that a failure to establish such a trust will leave it open to imputation that decedent had made an unnatural disposition of his property.

4. *Same; Conditions of Trust.*—While a resulting trust must be proved with great clearness and accuracy such a degree of proof is not required as to the existence of the conditions of a resulting trust, and for that purpose reasonable satisfaction of the minds of the triors of the facts will suffice.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by William T. Holt against Rosa A. Johnson and others, and William A. Holt and others against Elizabeth McEvoy and others, to establish a resulting trust in land. There were decrees for the respondents in both cases, and complainants appeal. Affirmed.

[Holt v. Johnson, et al. and Holt, et al. v. McEvoy, et al.]

FREDERICK G. BROMBERG, for appellant. The doctrine conceded to cover the purpose of this bill is stated in *Preston v. McMillan*, 58 Ala. 87. The evidence sustains the appellant's contention as stated in their bills according to the following decision of this court.— *Moseley v. Lane*, 27 Ala. 73; *Lehman v. Lewis*, 62 Ala. 129; *Sanford v. Hamner*, 115 Ala. 406; *Fowler v. Alabama Iron Co.*, 45 So. 636; *Thompson v. Hartline*, 105 Ala. 263; *Kelly v. Browning*, 113 Ala. 444; *Lee v. Browder*, 51 Ala. 288; *Tilford v. Torrey*, 53 Ala. 120; *Haney v. Legg*, 129 Ala. 619; *Preston v. McMillan*, 58 Ala. 87; *Skinner v. Chapman*, 78 Ala. 376; *Beadle v. Seat*, 102 Ala. 532; *Sanders v. Steele*, 124 Ala. 415; *Caple v. McCullom*, 27 Ala. 461; *Bates v. Kelly*, 80 Ala. 142; *Kent v. Dean*, 128 Ala. 609.

SULLIVAN & STALLWORTH, for appellee. Under the well established principles of law as set out in Pom. Eq. Jur. secs. 1037, 1043, 1038, 1040, 1044, 1049, 1051, 1058, no resulting trust is shown in this case. The burden rests on the complainant.—*Lehman v. Lewis*, 62 Ala. 133; *Patton v. Beecher*, 62 Ala. 584; *Tilford v. Torry*, 53 Ala. 123; *Bibb v. Hunter*, 79 Ala. 358.

McCLELLAN, J.—These bills were filed by appellants, the husband and the next of kin and heirs at law of Mary Jane (Jennie) Holt, nee McEvoy, to have declared and enforced primarily resulting trusts in certain real property, on the theory that funds of Mrs. Holt were employed by Mrs. Ann McEvoy, her mother and the mother of the respondents (appellees), in the several purchases of the real property described in the bills, and to which Mrs. McEvoy took the title in her own name. There are also phases of the bills seeking the imposition of a charge on the McEvoy homestead to

reimburse the successors in right of Mrs. Holt for funds belonging to her which were devoted to the permanent improvement of the homestead premises, and, also, to secure the possession of a piano alleged to have been paid for out of funds belonging to Mrs. Holt. There is not, as indeed there could not be, any real contention as to the law of the cases. The controverted issue is the same in both. It is of fact purely. The resolution of this issue will determine the equities of both.

The part of the transcript devoted to setting out the testimony, pro and con, covers upwards of 90 closely typewritten pages, and the very helpful discussion by the solicitors in the cause of the evidence bearing on the issue comprises upwards of 60 closely typewritten pages of large dimensions. The whole testimony has been most carefully read and considered, and the discussions of the solicitors have received like attention. From this volume of record matter, dealing with circumstances and events, personal acts and conduct, covering 20 years or more, it is apparent that a full treatment in opinion of the evidence in the cause is impossible. The solicitors and ourselves must in view of the evident necessity be content with the chiefly general statements and conclusions to follow.

The theory of the bill invokes a familiar phase of equity jurisprudence, viz., the establishment and enforcement of an implied trust. Such implied trusts reckon the legal title in another, and to avoid the conveyance, in cases of the character here presented, and to establish the trust resting, as it does, entirely in parol, it is well understood that the evidence must be "strong and unequivocal, and of such character as to disclose the exact rights and relations of the parties" (Jones on Ev. [2d Ed.] § 422) ; or, as said in *Lehman v. Lewis*, 62 Ala. 133, the proof "must be clear, full, and

[Holt v. Johnson, et al. and Holt, et al. v. McEvoy, et al.]

satisfactory and convincing"; or, as written in 1 Perry
on Trusts, 137, "the facts in all cases (of the character
in hand) must be proved with great clearness and cer-
tainty    *    *    *    and facts that only base a conjecture
that the conditions of a resulting trust existed are in-
sufficient." While the measure of certainty indicated
is always requisite, yet that measure does not require
the "clearest and most positive proof" of the existence
of conditions of a resulting trust.—1 Perry on Trusts,
§ 137. The satisfaction of the mind of the trior of the
facts will suffice.

In 1880 Owen McEvoy died, leaving a widow, Ann
McEvoy, and the following children in the order of
their ages: Jennie, Rosa, James, John, Lizzie, and
Patrick. He possessed a lot in Mobile on which they
then resided. The family was poor, at least after the
father's death. Jennie about that time entered on an
apprenticeship with a dressmaker, Mrs. Loyd. She
worked there, either as an apprentice or at her trade,
until a few days before her marriage to William T.
Holt, in 1886. Soon thereafter—whether from a small
beginning theretofore made by Jennie and Rosa during
times not demanded in the service of Mrs. Loyd is in
our opinion not important—the business concern above
referred to seems to have come into well-defined exist-
ence. Its place was in the McEvoy home. It grew with
the years, and in two or three years after Mrs. Holt's
marriage was of considerable size, and had a large cli-
entele among the most prominent and aesthetic people
of the city of Mobile. While the evidence shows with-
out any real doubt that Mrs. McEvoy was after the
death of her husband the dominant, managing head of
the household (not the business), it is just as well de-
monstrated in the evidence that the chief asset of the
business concern named before was the unusual skill

and taste of Mrs. Holt as a maker of apparel for women. So, if the controversy here could be determined by the response to the inquiry who afforded the real basis for popular favor, and, in consequence, the profitable (in business) enterprise, there would be no hesitancy in casting the conclusion for the appellants. The burden, writing with special reference to this cause, assumed by the appellants, was to trace funds of Mrs. Holt into the hands of Mrs. McEvoy, and to follow those funds into the purchases and expenditures before indicated. The evidence does not do this with the certainty requisite to justify the relief sought in these bills. The evidence leaves no room for doubt that the children of Mrs. McEvoy, some of them, omitting for the present reference to Jennie, even after maturity and up to the time of their marriages, regularly brought their earnings to Mrs. McEvoy. Doubtless this course was the product of the poverty prevailing about, and for a period of time after, the father's death —a course amounting to a pooling of the incomes of the working members of the household. Mrs. McEvoy herself, the weight of the evidence is, cooked, washed for strangers to the household, raised and sold some vegetables, and sold milk from a cow and a few goats. It is also apparent that she was a woman of frugal ideas, and supervised and restrained the children in matters of their clothing. There is a strong tendency in the evidence to the effect that she was generally the paymistress of the business concern, and so, out of the funds coming into her custody through Mrs. Holt and others connected with the business. William T. Holt became early after his marriage a member of the household, and paid $4 per week for his board. There is no evidence that Mrs. Holt and her two children ever paid any fixed board. It does appear that Mrs. McEvoy,

[Holt v. Johnson, et al. and Holt, et al. v. McEvoy, et al.]

and probably other members of the closely related household, took the natural part in caring for the Holt children. The original family changed by natural events; those marrying moving away. In the case of Rosa she was paid wages, after her marriage, when in the service of the business concern.

While the evidence admits of adverse inferences, if not of positive denial, we think the conclusion is unescapable that Mrs. Holt during the entire life of the business exercised without question the right to take out of, or to retain, or both, funds coming into the business for personal use. What, if anything, Mr. Holt contributed to her and the children's support or afforded her and their children for expenditure, is not clear from the evidence. He was steadily employed in other pursuits. Mrs. Holt traveled, especially after her health began to fail, and, from expressions made by her, it appears that one inspiration in her work was that she might travel for pleasure, if not for health. She was unquestionably the managing head of the business concern, buying materials, hiring and discharging the help, and exercising general supervision over the business. Such, we hope our summary has indicated, was the condition of affairs and course of business from 1886 to Mrs. Holt's death in 1902.

Aside from the wholly uncertain amount of funds of the business going into the custody of Mrs. McEvoy, her money possession had source, at least for many years, in the turned-in wages of some of her children (outside of Jennie). But the conclusion on the issue in hand cannot be controlled or materially affected, even if it be conceded, to appellants' advantage, that the sole money possessions of Mrs. McEvoy were derived from the business concern conducted in the home of Mrs. McEvoy and Mrs. Holt. The probative force of

the fact that bills against patrons of the concern were made out in the name as creditor of Mrs. Holt is not left unconsidered. As has been stated, her skil and taste was the inducement and life of the business. She managed it; she made it what it was. But from this, in the face of other evidence in connection with that we have indicated, it cannot be concluded that the business was that of Mrs. Holt alone. It is shown without dispute that Mrs. Holt besought Mrs. McEvoy to make a will (the terms of which she seems not to have suggested); and this to avoid confusion. Not only this, but, after a considerable sum or sums now claimed as upon the right of Mrs. Holt had been expended by Mrs. McEvoy in permanently improving the homestead lot, Mrs. Holt, with her husband, joined the other children for love and affection and $10 paid in a conveyance thereof to Mrs. McEvoy. This was a solemn act of Mrs. Holt herself, opposed to the theory of the bills before us. Not only this, but in 1891 Mrs. McEvoy expended $1,200 in the purchase of two pieces of the real estate now involved, in 1893 $800 was likewise expended, and in 1900 $1,800 was likewise expended; all the conveyances being taken to Mrs. McEvoy and promptly recorded. At no time was any complaint made by Mrs. Holt, if she actually knew of these dealings. At no time was it shown that she sought any adjustment of matters. No partnership agreement was ever made, and no fixed compensation or share of the business income for Mrs. Holt was ever mentioned so far as this record shows. The suggestion of Mrs. Holt that Mrs. McEvoy should make a will, to avoid confusion—a confusion doubtless meant to be attributed to the relative rights or claims of Mrs. McEvoy's other children— strongly supports the conclusion on the facts we feel impelled to announce, viz., that without arrangement express or implied, with Mrs. McEvoy or those of the home, Mrs. Holt built up and successfully managed the

[Holt v. Johnson, et al. and Holt, et al. v. McEvoy, et al.]

business described; that she took from its income what she needed or wanted, and so without being called to account; and that the rest went into the common fund out of which all in the house, save William H. Holt, lived, and out of which Mrs. McEvoy at least in part took the money, approximately $5,000, to improve the home place, and to make the purchases set forth in the bill. If the fund in Mrs. McEvoy's hands from the income of the business was treated as the subject of a common property in which Mrs. Holt was a sharer, to what part Mrs. Holt was entitled is, on this record, matter of pure conjecture, if, indeed, it could ever be made certain in any degree.

Under the rule before stated, for the measure of certainty of proof in order to sustain the declaration and enforcement of an implied trust, it is too evident for doubt as the learned chancellor concluded that in this instance the complainants entirely failed to maintain in the evidence their asserted theory of right and equity. That the brothers and sisters of Mrs. Holt, as appellants contend, will, through the will of Mrs. McEvoy, share, to the exclusion, pro tanto, of Mrs. Holt's children, in the result of years, even until her death, of the applied skill and the fine repute in her profession of their mother, Mrs. Holt—a result not in accord with natural duty or natural impulse—is without doubt a strong appeal to a universal human sentiment; but, though true and just the sentiment is, rules established for the ascertainment and vindication of rights cannot be qualified in application thereby. Impulse, however nobly inspired, should not, cannot, influence the judicial determination of issues at law or in equity.

The decrees appealed from must be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.