69 So.2d 864

## CASEY v. KRUMP et al.

### I Div. 576.

Supreme Court of Alabama.

Jan. 21, 1954.

D. R. Coley, Jr., and Chris C. DeLaney, Mobile, for appellant.

John Chason, Bay Minette, and Johnston, McCall & Johnston, Mobile, for appellees.

MERRILL, Justice.

Nic Krump owned considerable land in Baldwin County during his lifetime and at his death left an estate appraised at $23,-750. His wife contracted pneumonia in 1934 and the appellant and respondent Mildred Casey, then 18 years of age, came into the Krump home to nurse Mrs. Krump. Mrs. Krump recovered from pneumonia but she became mentally ill and was sent to a hospital in 1936, where she remained until her death in 1940. Mrs. Casey continued to live in the Krump household and she testified that she "drove the car, cooked and did anything that was needed to be done."

In 1938 she left the Krump home and lived in Florida and California, and while in California married one Robert Casey, was divorced by him and she returned to Baldwin County in 1945. She resumed her friendship with Mr. Krump and in 1946 he gave her a deed to some property and gave her $1,000 to pay on an automobile. He deeded another tract to her in 1947 and bought a home for her for which he paid $4,100, and they saw each other regularly, both prior and subsequent to the execution of the two deeds involved in this action, that date being the 18th day of January, 1950. On the morning of that day, Mr. Krump, 75 years of age, was examined by Dr. W. C. Holmes, who found him to be suffering from acute hematuria hypertension chronic blood pressure, prostatitis, chronic and senile dementia. After the doctor had left, Mrs. Casey took Mr. Krump in the Packard automobile which he had given her on Christmas day of 1949 and they drove to a real estate agent's office in

Foley, who was furnishing a desk in his office for the use of Mrs. Casey, and Mr. Krump executed one of the deeds here involved and left instructions for the other deed to be prepared conveying more of his lands to Mrs. Casey. He and Mrs. Casey returned in about two hours and he signed the second deed.

Dr. Holmes continued to see Mr. Krump every day and on January 22, 1950, he put him in Holmes' Hospital at Foley. He stayed in this hospital until January 29th, when Mrs. Casey and Mr. R. M. Smith of Mobile carried him to the Mobile Infirmary. Mrs. Casey had a cot placed in his room and stayed at the hospital with him until February 28th when Mr. Matt Krump and Mr. Herbert Krump, brothers of Nic Krump, requested that she leave.

The bill was originally filed under the style of "Nic Krump, a non compos mentis, by Matt Krump as next friend, complainant, v. Mildred Casey, respondent," to set aside the two deeds which were executed on January 18, 1950. Mr. Nic Krump died on February 14, 1951, and by his last will and testament, left all of his property to his two brothers, Matt Krump and Herbert Krump, and the suit was revived in their names. The demurrer to the bill was overruled, the answer filed denying the incapacity of Nic Krump to execute the deeds and the testimony taken ore tenus before the court. The decree granted the complainants the relief prayed for and Mrs. Casey has appealed.

■ Appellant argues two assignments of error. The first is that the allegation as to Nic Krump's insanity was insufficient and the demurrer should have been sustained. The allegation in the bill as amended is:

"6. At the time of the signing and delivery of said documents mentioned in Paragraph 5 of this bill, on the 18th day of January, 1950, Nic Krump was of unsound mind and incapable of executing said documents as valid deeds of conveyance to said lands, all of which was well known to the respondent at the time. * * *."

In Cox v. Parker, 212 Ala. 35, 101 So. 657, 659, a bill to cancel a deed of gift, the allegation "that at the time of the signature

by her, she had become greatly weakened mentally and physically, and did not know or understand the nature or the consequences of the act she was about to perform", was held "sufficient to raise the issue of the soundness of mind of the donor;" and in Holden v. Holden, 235 Ala. 436, 179 So. 523, where the allegation was "and complainants say that the said deed is null and void and of no effect for that on the date of the execution of said deed the said C. W. Holden was non compos mentis and incapable of making a contract", the court held that allegation to be the equivalent of the allegation that the grantor "was insane and did not have sufficient mind to understand the business he was engaged in when transacting the same". The demurrer was properly overruled.

The other assignment of error is that the evidence was not sufficient to establish that Nic Krump was of unsound mind and incapable of executing the instruments as valid deeds of conveyance.

■ The rule is stated as follows in Hall v. Britton, 216 Ala. 265, 113 So. 238, 239, "In order to render a deed void because of the mental incapacity of the grantor—and the principle is the same for any other signatory—the test is 'not merely that the grantor's mental powers were impaired, but whether he had sufficient capacity to understand in a reasonable manner the nature and effect of the act which he was doing.' 18 C.J. 218, § 131; White v. Farley, 81 Ala. 563, 8 So. 215; Stanfill v. Johnson, 159 Ala. 546, 49 So. 223", and is followed in Spence v. Spence, 239 Ala. 480, 195 So. 717.

The evidence on the subject of Mr. Krump's sanity at or near the time of the execution of the deeds was in sharp conflict. The appellees presented four doctors, one of whom was Dr. Holmes, and four laymen. Among the statements made by Dr. Holmes are these:

"Q. Was he capable of understanding any kind of business transaction that anybody might have handed him that day (Jan. 18, 1950)? A. No, sir, he wasn't.

\* \* \* \* \* \*

"On Recross Examination:

"Q. Now Doctor, was he of unsound mind also on the 29th of January, 1950? A. Yes sir.

"Q. And at all times on the 18th? A. He was mentally confused, and completely disorientated entirely from the time he was there.

"Q. And you say he wasn't capable of knowing what he was doing at all? A. No sir."

The appellant, Mrs. Casey, and seven laymen testified that Mr. Krump was of sound mind, but no medical testimony was offered in support of this position.

We have read and carefully considered all the evidence, and indulging in the presumption that the finding of the trial court, who saw and heard the witnesses, will not be disturbed unless plainly and palpably wrong, Gardiner v. Willis, 258 Ala. 647, 64 So.2d 609, we think the decree of the circuit court should be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.