145 So.2d 415

**Lola P. SHIRLEY et al.**

v.

**Edward E. McNEAL et al.**

**6 Div. 698.**

Supreme Court of Alabama.

Aug. 30, 1962.

Rehearing Denied Oct. 18, 1962.

J. Terry Huffstutler, Birmingham, for appellants.

John J. Smith and Geo. S. Brown, Birmingham, for appellees.

SIMPSON, Justice.

Edward E. McNeal and Pansy Louise McNeal, appellees, filed their original bill, and subsequently an amended bill, against Lola P. Shirley, as administratrix of the estate of Gordon M. Parson, deceased, and Rodney R. Parsons and Dr. M. B. Parsons, all heirs of Gordon M. Parson, deceased. ("Parson" seems to have been used interchangeably with "Parsons".) They sought to establish a resulting trust in favor of complainants and to enjoin the administratrix of the estate of Gordon M. Parson from any action ousting the complainants from the possession of the real estate involved herein pending this litigation. An agreement was reached between counsel for complainants and respondents whereby it was agreed that a restraining order should be issued by the court upon the posting of bond by complainants. The bond was posted and the restraining order entered by consent.

The case was tried on the substantial issue remaining, i. e., whether or not the complainants under the facts and law were entitled to have impressed on the real property involved a resulting trust in their favor.

The bill alleged that on or about August 10, 1948, they bought from Lena Saizis, a widow:

> Lot 9, Block 4–A East Lake, as recorded in Map Book 1, page 217, in the office of the Judge of Probate of Jefferson County, Alabama, * * *

and

> "that your complainants paid the down payment of $500 on the purchase price of the aforesaid real estate and agreed to pay the remaining balance thereof; that title to the said real estate was transferred by the said Lena Saizis to the said Gordon M. Parsons, now deceased, who signed a note for the balance of the purchase price and executed a mortgage on the same to secure the payments of said note * * *."

The cause was tried ore tenus by the court, who at the close of the testimony entered a decree impressing a resulting trust upon the property in favor of complainant Edward E. McNeal.

The court's decree alludes to much of the evidence adduced at the trial of this cause. It is reproduced in part here for an understanding of the facts of the case:

> "The court finds that complainant Edward E. McNeal is the real party in interest and therefore no relief is awarded to Pansy Louise McNeal, his

wife and co-complainant. Mr. McNeal with his wife and two children live in the home on the suit property. Though there are and have been other parties respondent, the issues are most vigorously litigated by respondent Mrs. Lola P. Shirley, individually and as administratrix of the estate of Gordon M. Parsons, deceased, hereinafter referred to as Mr. Parsons. Mrs. Shirley was a sister of Mr. Parsons, who was also survived by two brothers and his father, the last being presently deceased, he having been the father of all respondents, and being survived by no other heirs. There seems to be no necessity for administration upon his estate, or appointment of an administrator ad litem. Mr. Gordon Parsons was not survived by any wife, child, or children of any deceased child, and died intestate, though he attempted to leave a will which was insufficiently executed for admission to probate, and which purported to make complainants the sole beneficiaries.

"Complainants aver that 'they' bought the suit property in 1948, it being described as, to-wit:

"[Same as description, supra.]

"They claim to have made the down payment of $500.00 on the purchase price (to the vendor, Mrs. Saizis) and *agreed to pay the remaining balance thereof*. Such is the allegation of the substitute bill of complaint, which is somewhat eloquently silent as to the identity of the party to whom the balance was contracted to be paid. Mrs. Saizis actually conveyed to Mr. Parsons as named grantee, and he alone signed the note and executed the mortgage securing the entire balance. The purchase money note and mortgage have since been assigned, and there is still a balance due thereon after all payments to date, which complainants claim to have paid, and aver an intent to pay the remainder.

"The bill alleges that at no time since the purchase did Mr. Parsons make any claim or assert any interest or right in or to the dwelling house and lot, same being now the 'homestead' of complainants and their children and it has been so occupied by them continuously since purchase. These facts (using the word 'homestead' in its non-technical sense), the Court finds from the evidence to be true. Complainant has paid all insurance premiums, maintained the premises in a state of repair, and made some permanent improvements. The source of tax and purchase payments is considerably more obscure. Chiefly they were made by checks on a bank account standing in Mr. Parsons' name, but in which the McNeal salary checks were deposited.

"The principal relief sought is, of course, the declaration and establishment and execution of a resulting trust in complainants' favor as against the heirs of Mr. Parsons, the named grantee, in whom is now vested the legal title under the statute of descents. The answer is so brief and general as to almost constitute a plea of the general issue in equity, and is not nearly so responsive in detail as is required by the Equity Rule. Nevertheless, considering respondents' handicap in endeavoring to maintain their rights under facts which might be testified to by their deceased brother, and with complainant operating under the strictures of the statute relating to disqualification of parties as witnesses, it is thought best to put the dispute at rest on the merits without too much regard to the generality of the pleadings.

"There are many puzzling inconsistencies in the proof in this record. Both Sgt. McNeal and Mr. Parsons were intelligent and able police officers of experience, by no means unacquainted with legal matters. The claimed motivation for the taking of title as

was done is far-fetched and flimsy. The unbusiness like confusion of joint handling of funds, unrealistic banking transactions, cross-agencies, peculiar handling of records, odd treatment of income and deductions in income tax returns, et cetera, make a web so tangled that the court has had no little difficulty in trying to find the truth. Much latitude was accorded reception of evidence, including a great deal of detail of collateral situations and transactions. All the evidence was listened to closely, critically, and even skeptically, since as respondents' able counsel properly stresses, a large claim to real property is sought to be established as against a dead man, 'without a single scratch of a pen' to corroborate it.

"Whatever may have been the real background of the parties' dealings with each other, the credible and clear testimony of several apparently disinterested witnesses, combined with the unlikelihood that a single man no longer young, with no dependents living with him, not in the best of health, and often under heavy financial strains, would invest his funds in such a house as is described, especially when he travelled for most of the time and eventually bought a house trailer for himself, all together with many, many circumstances and inferences and tendencies arising therefrom, have impelled the Court to the finding and conclusion that the actual intent of the parties was to vest beneficial ownership in complainant, and that so much of the purchase price as has been thus far paid was paid entirely with funds from the income of Sgt. McNeal. An implied trust results which must be established and enforced in his favor against the respondents.

"The legal question of seeming greatest importance has not been very fully presented. It is settled that the purchase price must be ordinarily furnished by one claiming a resulting trust at the very time of passage of title. The trust either arises at that very time, or it never arises at all. Subsequent contributions do not suffice, though they may give rise to an equitable lien. Subsequent advances on the purchase by the claimant would serve merely to create an attempted parol trust in lands repugnantly to the statute of frauds. Our Supreme Court is cited several times by Mr. Pomeroy as adhering to the general rule that the claimant must become absolutely bound for future deferred installments at the very time of purchase, this being the exact time when legal or equitable [title] [sic] passes out of the vendor and vests in the purchaser. But where the claimant does actually furnish all or part of the cash payment and becomes absolutely bound for the future payments, *and thereafter actually pays the latter,* a resulting trust does arise.

"The Court knows of no rule which prevents application of the doctrine because as yet the purchase contract is still executory in the sense that all the mortgage payments have not presently matured or been paid. In at least one case, the matter has been resolved on the theory that the grantee in effect acted as claimant's agent and thus committed him to liability for the future payments. Also it might be argued that Sgt. McNeal and Mr. Parsons contracted, for the benefit of a third party, the seller or her transferee, that McNeal should actually make the payments through Parsons. Also, that McNeal could be held directly liable to the transferee upon a promise implied in fact. But whatever the theory, the Court finds from all the evidence a sufficient obligation upon McNeal for the future installments incurred at the time of purchase to support the trust. This, while recognizing that the rule should not be overstretched, lest titles to realty become unstable, when that of a deceased person is attacked, perhaps

by way of afterthought, by persons who do not have a 'single scratch of the pen', and who find the trend of the market such as to make it profitable to belatedly seek to become absolutely obligated for the mortgage payments, even against those whose muniments and evidences of titles are full of a great many such 'scratches'.

"Respondents contend for application of limitations and laches. Such defense was not raised by plea or answer, but the argument is that the demurrer to the bill should have been sustained on that basis. The bill affirmatively shows continuous possession and occupancy of the premises as the home of complainant and his family, and that Mr. Parsons never asserted any inconsistent claim of interest. And the evidence clearly shows that complainant was never called upon to defend his claim until after the dispute arose shortly before the filing of the bill. In this status the Court cannot sustain the defense of laches.

"It is therefore CONSIDERED, ORDERED, ADJUDGED and DECREED by the Court as follows:

"1. That a resulting trust be, and it hereby is, ascertained and established in favor of complainant Edward E. McNeal and against the respondents in and to the following parcel of real property located in the City of Birmingham, Jefferson County, Alabama, viz.:

"Lot 9, Block 4–A Lake Survey, as recorded in Map Book 1, page 217, in the Office of the Probate Judge of Jefferson County.

"2. That all title to said land, legal and equitable, be and it hereby is divested out of the respondents, all and singular, namely, Lola P. Shirley, individually and as Administratrix of the Estate of Gordon M. Parson, deceased, Rodney R. Parsons, and Dr. M. B. Parsons.

"3. That all such title as aforesaid be and it is hereby declared, decreed and judicially vested in said complainant, as against said respondents or any of them, subject to the conditions hereinafter specified in paragraph 5 of this decree.

"4. That the prayer of the bill be granted, and that respondents and each of them be and they hereby are restrained, enjoined and prohibited from instituting or further prosecuting any action against either of complainants to oust them from possession of the hereinabove described premises, or to collect any rental therefor.

"5. That complainant assume and undertake to pay to Home Federal Savings and Loan Association or its assigns and successors all the balance due under the mortgage and note executed by Gordon Parsons presently held by said Association upon the suit property, in full and promptly as the installments mature, plus any and all interest, penalties, costs and charges of whatever nature that may accrue under said instruments, and to fully indemnify save and hold harmless therefrom the respondents and each of them, individually and in whatever capacity they may sustain, as well as their respective heirs, legatees, devisees and assigns.

"6. This decree shall only become effective upon the said claimants, within thirty days from the date hereof, making and filing with the Register of this Court a bond in the penal sum of $5,000.00, payable to respondents jointly and severally, with good and sufficient surety or sureties, and conditioned upon said complainant's faithful performance of the obligations imposed as a condition of relief under paragraph 5 of this decree.

"That all costs of this cause be, and they are hereby taxed one-fourth against respondent Lola P. Shirley, in her representative capacity and one-

fourth in her individual capacity, and one-half against the complainants, for all of which let appropriate executions issue."

"DONE and ORDERED, this 22nd day of November, 1960."

The first two assignments claim error in the action of the trial court in overruling the demurrer to the amended or substitute bill. The third assignment is the claimed error in the rendering of the final decree in favor of appellee.

We, like the trial court, think it "best to put the dispute at rest on the merits without too much regard to the generality of the pleading". Nevertheless, the allegations of the bill show that there was no hostile adverse possession on the part of the decedent, but to the contrary, clearly states that at no time since the purchase did Mr. Parson make any claim or assert any interest or right in or to the dwelling house and lot. We entertain the view, therefore, that the demurrer on the ground that the complaint showed on its face that the action was barred by the statute of limitations was not well taken. The ten-year statute of limitations based on adverse possession does not begin to run in such a case as long as there is a recognition of the trust by the trustee. Sykes v. Sykes, 262 Ala. 277, 78 So.2d 273; Jacksonville Pub. Serv. Corp. v. Profile Cotton Mills, 236 Ala. 4, 180 So. 583.

Appellants next claim error in the court's rendering its final decree establishing a resulting trust in the property in favor of appellee McNeal. In the case of J. A. Owens & Co. v. Blanks, 225 Ala. 566, 144 So. 35, the court thus exposited the doctrine:

"To establish a resulting trust in lands, which in effect fixes and decrees a beneficial ownership in another than the grantee in the solemn muniment of title, the bill must disclose the facts upon which such trust arises; the allegations and the proof must correspond; and the evidence must be full, clear and satisfactory. Heflin v. Heflin, 216 Ala. 519, 113 So. 535; Corley v. Vizard, 203 Ala. 564, 84 So. 299; Hicks v. Biddle, 218 Ala. 2, 117 So. 688; Carlson v. Erickson, 164 Ala. 380, 51 So. 175; Holt v. Johnson, 166 Ala. 358, 52 So. 323; Lehman v. Lewis, 62 Ala. 129; Tilford v. Torrey & Lockwood, 53 Ala. 120; Larkins v. Rhodes, 5 Port. 195.

"A resulting trust, the holding of title by one with beneficial ownership in another, is a creature of equity, based upon the prima facie presumption that he who pays the whole or an aliquot part of the purchase price for lands becomes the beneficial owner. The doctrine does not rest on an express, but on an implied, agreement, by which the title is taken in the name of another as matter of convenience. No tort or breach of duty is involved in this form of trust. The conveyance, as made, may be in keeping with the common purpose of all parties.

"But, in the nature of the case, as often declared, this beneficial ownership must arise at the time of the purchase * * *.

"The time of purchase within the meaning of this rule has been declared to be when title, legal or equitable, passes out of the vendor and vests in the purchaser. Guin v. Guin, supra, [196 Ala. 221, 72 So. 74]; Heflin v. Heflin, 208 Ala. 69, 93 So. 719."

Where the purchase is evidenced by an executory contract in writing, a portion of the money being paid, balance to be paid in deferred installments, an equitable interest or title vests in the purchaser. Love v. Butler, 129 Ala. 531, 30 So. 735; Heard & Lee v. Heard, 181 Ala. 230, 61 So. 343; Bessemer Coal, Iron & Land Co. v. Bullard, 215 Ala. 433, 111 So. 5.

In such cases, this court has approved the rule that a party to such pur-

chase, who makes the cash payment, or his aliquot portion thereof, and becomes absolutely bound for the deferred installments, and thereafter pays the same, the deed being taken in the name of another, a resulting trust arises. Upchurch v. Goodroe, 242 Ala. 395, 6 So.2d 869; Bibb v. Hunter, 79 Ala. 351; Butts v. Cooper, 152 Ala. 375, 44 So. 616; Watkins v. Carter, 164 Ala. 456, 51 So. 318; J. A. Owens & Co. v. Blanks, 225 Ala. 566, 144 So. 35(5).

Such is the law, generally, on the subject. 5th Pomeroy, Eq.Jur., § 1037, pp. 71–72.

■■ It, of course, is well settled that the evidence of payment of the purchase price or an aliquot part thereof must be full, clear and satisfactory. J. A. Owens & Co. v. Blanks, supra. The trial court believed such a case was made in the present litigation. There is much evidence to the effect that the $500.00 down payment was made by appellee McNeal; that all subsequent payments were also made by him. We cannot say that the trial court's finding in that regard was clearly wrong. He states that the reason for title being taken in Parson's name was not clear, but we know of no rule which requires the motivations of the parties to be shown by full and satisfactory evidence.

■ The issue tried in the court below presented purely questions of fact for the trial judge. He heard and had an opportunity to see the witnesses, many of whom have no interest in the outcome of this litigation. He found that the appellee, McNeal, paid the down payment and became obligated to pay the deferred installments. Such facts are sufficient basis for the relief granted in the decree. We should not substitute our judgment as to the facts unless his conclusion is palpably wrong and unjust. which we cannot so affirm. Culpepper v. Davis, 267 Ala. 541, 103 So.2d 179; Beavers v. Harris, 265 Ala. 548, 93 So.2d 161; Parrish v. Davis, 265 Ala. 522, 92 So.2d 897; Casey v. Krump, 260 Ala. 280, 69 So.2d 864.

The argument of learned counsel for appellants is most cogent, but in view of the presumption attending the ruling below on conflicting matters of fact, we are persuaded that to disturb that ruling would be unwarranted.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.