[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 365 
Sabrina Woodard appeals from a judgment refusing to set aside a conveyance of real property by Larry Funderburk to his wife Gina Funderburk. Larry and Gina cross-appeal from a judgment imposing a lien on the real estate in favor of Sabrina. We affirm as to the appeal and reverse as to the cross-appeal.
In 1994, Larry Funderburk negotiated the purchase of a house and eight acres of land from Marvin Ridgeway for $76,000. On February 1, 1994, Ridgeway and his wife executed a deed conveying the property to Jason Funderburk, Larry's son, who was then 19 or 20 years old. On the same day, Jason executed a note for $60,000 to the Ridgeways secured by a mortgage on the property, a will devising the real estate to Larry, and a power of attorney in favor of Larry.
It is undisputed that Larry had title to the property put in Jason's name because Larry "had an ongoing battle with the Mississippi State Tax Commission and [the Commission] had recovered a judgment" against Larry. It is also undisputed that Larry made the initial down payment on the purchase price as well as all subsequent payments on the note. The note has now been paid off. Larry has resided on the property since 1994; Jason never resided there.
In 1996, Jason was adjudged to be the father of Sabrina Woodard's child and was ordered to pay child support. In 1997, the Colbert Circuit Court entered a judgment for Sabrina on her claim against Jason for unpaid child support in the amount of $10,746.88 plus interest and costs. In 1998, Larry, as attorney-in-fact for Jason under a power of attorney, executed a deed to the property to Larry's wife Gina. In May 1999, Jason died, and Sabrina was appointed as the administratrix of his estate. In June 1999, Sabrina recorded in Lamar County the judgment against Jason for past-due child support and filed a claim against the estate. Sabrina then brought the instant action, seeking to set aside the 1998 conveyance to Gina, by Larry, pursuant to the power of attorney from Jason.
Following a bench trial, the circuit court denied Sabrina's request to set aside the conveyance. The court, however, entered a judgment imposing a lien on the real estate in the amount of the judgment against Jason for past-due child support plus interest and costs, then totaling $18,395.20. Sabrina appealed to the Alabama Supreme Court; Larry and Gina cross-appealed. The supreme court transferred the appeals to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
 I. Fraudulent Conveyance
Sabrina argued in the trial court, and now maintains on appeal, that the 1998 deed to Gina was due to be set aside on two grounds: (1) that it was a fraudulent conveyance to avoid the claims of creditors, and (2) that it exceeded the authority granted Larry by the power of attorney and represented a breach of Larry's fiduciary duties to Jason under the power of attorney. Larry claims that he has had *Page 366 
title to the property since 1994, by virtue of a resulting trust.
All parties agree that in 1994 Larry arranged for the real estate to be titled in Jason's name, that Larry prevailed on Jason to devise the property to him by will, and that Larry caused Jason to execute a power of attorney in his favor, solely to avoid the claims of Larry's creditor, the Mississippi State Tax Commission. As to that creditor, the 1994 conveyance from the Ridgeways to Jason was clearly fraudulent. However,
 "[f]raudulent conveyances may be attacked only by a party who is injured or damaged by the conveyance, and a stranger to the transaction who is neither a creditor [n]or a purchaser or otherwise affected has no standing to maintain the action."
Jesse P. Evans, Alabama Property Rights and Remedies § 31.7(a) at 543 (2d ed. 1998). Sabrina was not injured by the 1994 conveyance to Jason, and she is not seeking to set aside that conveyance. In fact, Sabrina's claims hinge upon the validity of the 1994 conveyance. She argues that Larry's fraud on one creditor, effected by the 1994 conveyance to Jason, infected the 1998 conveyance to Gina and established Larry's fraud with respect to another creditor — Sabrina. She cites no authority for that argument, and we have found none. There are two problems with Sabrina's argument.
First, each conveyance must be viewed independently, because what might be considered "a fraudulent conveyance is valid as to all the world except creditors of the grantor." Bank of Lexington v. Jones,456 So.2d 784, 785 (Ala. 1984). As to Sabrina (and anyone other than the Mississippi State Tax Commission), the 1994 conveyance was valid. Second, even a liberal construction of the fraudulent-transfer statute requires some demonstration that "the debtor" has put his property beyond the reach of a creditor. See Folmar Assocs. LLP v. Holberg,776 So.2d 112 (Ala. 2000). As to the 1998 conveyance, Larry, the transferor/attorney-in-fact for Jason, was not Sabrina's "debtor" within the meaning of the Alabama Uniform Fraudulent Transfer Act ("AUFTA"). Sabrina's "debtor" was Jason, and Jason did not put the property beyond the reach of Sabrina; Larry did. See Folmar Assocs. LLP v.Holberg, supra.
In Folmar Associates LLP v. Holberg, a judgment divorcing Pamela Holberg and William Cagle required Cagle to make monthly alimony payments of $4,000 to Holberg and prohibited Cagle from allowing his real property or interest in a partnership to pass out of his probate estate. Cagle was a partner in Folmar Associates and had taken cash advances against his ownership interest in the partnership. Cagle later remarried, suffered a debilitating stroke, and incurred considerable medical expenses. He executed a power of attorney to his new wife Regina, who used the power to transfer Cagle's assets into her name. The partnership began to advance Cagle $20,000 per month to cover his medical expenses. After consultation with Cagle's wife and financial advisor, the partnership reduced its advances to $11,000 per month. After the reduction, Cagle discontinued his alimony payments to Holberg. Cagle died and his estate was declared insolvent. Holberg sued Cagle's wife Regina, the partnership, and the financial advisor, alleging, among other things, a conspiracy to fraudulently transfer Cagle's assets. The trial court denied the defendants' motions for a summary judgment, and the Alabama Supreme Court granted them permission to appeal pursuant to Rule 5, Ala.R.App.P.
The court reversed, concluding that the defendants were entitled to a summary *Page 367 
judgment because the AUFTA applies only to conveyances "made by a debtor," none of the defendants was Holberg's debtor, and Holberg's claim was against Cagle's estate. The court stated:
 "Holberg argues that this Court should give the fraudulent-transfer statute a liberal construction and apply it to her claims against the defendants. . . .
"`. . . .'
 ". . . Even a liberal construction of the statute requires some demonstration that the debtor has put his property beyond the reach of a creditor.
 "Holberg has cited no cases in which someone other than the debtor has been held liable under the fraudulent-transfer statute. Holberg simply argues that her claims should be valid under the statute because, she argues, Folmar [one of Cagle's partners] was fraudulently transferring Cagle's assets to Regina; Regina was acting on behalf of Cagle when she used the power of attorney to transfer his assets into her name; and [the financial advisor] was `concocting schemes for Regina to fraudulently put Cagle's assets into her name.' However, Holberg's claims are missing one essential element for a cause of action pursuant to the Alabama Uniform Fraudulent Transfer Act: The transfer of property by the debtor.
". . . .
 "We have found no case in which the provisions of the Alabama Uniform Fraudulent Transfer Act, § 8-9A-1
to -12, have been extended to apply to transferors other than the debtor. Holberg argues that the defendants were in control of the debtor's assets and, therefore, should be held liable. . . . Even if we accepted Holberg's argument that Folmar and [the financial advisor] engaged in a conspiracy to defraud her, the Alabama Uniform Fraudulent Transfer Act, by its plain language, does not apply to claims against third-party transferors. Holberg's claim under that Act should have been asserted against the debtor (Cagle) or his estate. While there may be valid policy arguments for extending the Act to apply to transferors who are in control of the debtor's assets, `it is not for the Judiciary to impose its view on the Legislature.' Ex parte T.B., 698 So.2d 127, 130 (Ala. 1997)."
Folmar Assocs. LLP v. Holberg, 776 So.2d at 117-18 (first emphasis original; remaining emphasis added).
We conclude that, as to Sabrina, the 1994 conveyance was not a fraudulent transfer and, as to the 1998 conveyance, Larry, the transferor, was not Sabrina's debtor.
 II. Resulting Trust
Larry claims that a resulting trust in his favor arose from the 1994 conveyance to Jason. Sabrina argues that Larry failed to plead a resulting trust and, furthermore, that the issue was not tried by the express or implied consent of the parties. We conclude that the issue was tried by the implied consent of the parties.
On June 5, 2001, Larry filed an amended answer in the Fayette Circuit Court, alleging that a resulting trust was created by the 1994 conveyance of the property to Jason. On June 6, the case was tried in Vernon. On June 7, Sabrina's counsel received the amended answer, which had been postmarked "June 6." Rule 5(b), Ala.R.Civ.P., provides that service by mail is complete upon mailing. Thus, when the case was tried, Sabrina's counsel had been served with Larry's amended pleading. At trial, Sabrina's counsel objected to the introduction of Ridgeway's deposition and to the introduction of a record reflecting Larry's payment on the note for the property purchased from the *Page 368 
Ridgeways and titled in Jason's name. Sabrina's counsel specifically stated, "Again, I renew my objection about any resulting trust. I mean, I'm not trying this by implication." Earlier in the trial, however, Sabrina's counsel had called Larry as a hostile witness and questioned him about the fact that he had provided the sole consideration for the property purchased from the Ridgeways. Sabrina's counsel failed to object or move to strike when Larry testified that he had paid for the property. Under the circumstances, we hold that Sabrina waived any objection to trying the issue of a resulting trust. See Associates Fin.Servs. Co. of Alabama v. Barbour, 592 So.2d 191 (Ala. 1991).
 "A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property."
5 William F. Fratcher Austin W. Scott, The Law of Trusts, § 404.1 at 6 (4th ed. 1989). A purchase-money resulting trust is implied in law when one person pays for the purchase of land and title is taken in the name of another. See, e.g., Lauderdale v. Peace Baptist Church,246 Ala. 178, 180, 19 So.2d 538, 539 (1944). See generally George G. Bogert and George T. Bogert, The Law of Trusts and Trustees § 454 (rev.2d ed. 1991); Fratcher Scott, The Law of Trusts, § 440.
 "The principle has its foundation in the natural presumption that one who supplies the purchase money intends the purchase to be for his own benefit and not for another, and when the conveyance is taken in the name of another the presumption usually arises that the grantee is holding the land in trust for the purchaser."
Rodgers v. Thornton, 254 Ala. 66, 68, 46 So.2d 809, 810 (1950).
 "This resulting trust depends for its existence on the actual intent of the creator, expressed in acts other than writing or the spoken word. The conduct of the payor with reference to the price and deed lead the court to infer an intent to have a trust for himself. The theory of enforcement is that of carrying out the intent of the settlor, just as truly as if he had reduced his trust to writing and inserted it in the deed. Resulting trusts are `intent enforcing' just as much as are the usual express trusts. They bear little or no relationship to constructive trusts, which do not arise out of intent but depend for their existence on the wrongful conduct of the defendant which induces a court to adjudge him a trustee."
Bogert, § 454 at 249. The evidence was uncontested that Larry's intent in arranging the 1994 conveyance, along with the will and the power of attorney executed by Jason, was to maintain beneficial ownership of the property for himself. Jason was there, as the lawyer who prepared the deed testified, merely to do Larry's bidding, and Larry intended to live on the property and to treat it as his own.
The resulting-trust theory would create a beneficial interest in Larry at the time of the conveyance in 1994. "The purchase-money beneficiary acquires at once a vested interest." Bogert § 454 at 250.
 "The resulting trust of the purchase-money type arises at the time of the delivery of the deed or other instrument of conveyance passing title to one other than the payor. The trust is not dependent on a decree of court for its establishment. The court may later recognize it and enforce it but equity treats it as having been in existence from the time of the conveyance." *Page 369 
Bogert, § 454 at 259 (emphasis in original). See also Shirley v.McNeal, 274 Ala. 82, 145 So.2d 415 (1962).
In the absence of an intent to defraud the Mississippi State Tax Commission, Larry would normally have a resulting trust implied for his benefit from the 1994 conveyance. A different rule is applied, however, because that conveyance was an attempt to defeat Larry's creditor.
 "If the payor had the title run to another for the reason that he (the payor) desired to defeat, delay, or hinder his creditors, the case will be judged in the same way as an express trust for fraudulent purposes. Thus, if A conveyed to B in trust for A with the purpose of defrauding A's creditors, A cannot enforce the trust for himself ordinarily, but his creditors can attack the transfer and get the benefit of the property. And so, if A pays for land and has it conveyed by absolute deed to B, with the intent of evading A's creditors, the court will render A no aid in securing the enforcement of the resulting trust which would normally be implied for his benefit, but the creditors of A may take his equitable interest by resorting to the procedure required in such an instance in the particular jurisdiction.
 "Some courts state that `no trust results' to the fraudulent payor of the consideration. It would seem more accurate to hold that a trust results, but that the beneficiary of it will not receive aid from the court in the enforcement of the trust because of his unconscionable conduct."
Bogert, § 463 at 388-91 (emphasis added). Although Larry may have been the beneficiary of a resulting trust in 1994, the trial court was correct in holding that he could receive no aid in enforcing his beneficial interest because of his intent to defraud the Mississippi State Tax Commission. Moreover, had Sabrina attempted to enforce her 1997 judgment against Jason by levying on the property before it was transferred to Gina in 1998, Sabrina, too, would have been denied relief.
 "The creditors of the resulting trustee [here, Jason] can obtain no interest in the property in question by attaching it for his debts . . . . The creditors of the payor [here, Larry], on the other hand, can proceed against the property on the theory that their debtor is its equitable owner."
Bogert, § 454 at 259.
Sabrina did not, however, attempt to obtain an interest in the property until after Larry, as attorney-in-fact for Jason, had transferred the property to Gina in 1998. Sabrina's attempt to obtain an interest in the property after 1998 is foreclosed by the holding of the supreme court inFolmar Associates LLP v. Holberg, supra: that the fraudulent-transfer statute does not apply to a third-party transferor — even one who is in control of the debtor's assets by virtue of a power of attorney — because the transferor is not the debtor.
 III. Power of Attorney
In view of the holding in Folmar Associates LLP v. Holberg, we need not decide whether, by conveying the property to Gina, Larry exceeded the authority granted him under the power of attorney from Jason because the result for Sabrina would be the same irrespective of our decision on the issue. If Larry did exceed his authority, and the conveyance to Gina was thereby rendered invalid, the property would have been Jason's during his lifetime and then become an asset of Jason's estate. Sabrina did not, however, sue Jason's estate. Cf. Folmar Assocs. LLP v. Holberg, 776 So.2d at 118 ("Holberg's claim . . . should have been asserted against the debtor (Cagle) or his estate"). If Larrydid not exceed his authority, and *Page 370 
the conveyance to Gina was valid, Sabrina would have no remedy for the alleged fraudulent transfer against Larry because Larry was not her "debtor."
 IV. Summary
We conclude that, as to Sabrina, the 1994 conveyance was not a fraudulent transfer. We also conclude that, as to the 1998 conveyance, Larry was not Sabrina's "debtor." From those conclusions, it necessarily follows that the trial court had no authority to impose a lien on the property. We hold that it is unnecessary to decide the issue regarding the scope and appropriate exercise of the power of attorney given to Larry.
The judgment from which Sabrina appeals is affirmed; the judgment from which Larry and Gina cross-appeal is reversed.
APPEAL — AFFIRMED.
CROSS-APPEAL — REVERSED.
Yates, P.J., and Thompson and Pittman, JJ., concur.