26 So.2d 81

**HENDERSON BAKER LBR. CO. v. HEADLEY et al.**

2 Div. 219.

Supreme Court of Alabama.

May 9, 1946.

Adams & Gillmore, of Grove Hill, and Wallace H. Lindsey, Jr., of Butler, for appellant.

684

Howard Scott, of Chatom, and Robt. H. Smith, of Mobile, for appellee Headley.

GARDNER, Chief Justice.

The Henderson Baker Lumber Company, a corporation, hereinafter designated as "Baker," filed the bill in this cause against E. K. Headley and Miller & Company, Inc. The Miller Company alone interposed demurrer to the bill as amended, which demurrer was sustained, and from that decree Baker prosecutes this appeal.

Complainant sought injunctive relief against both Headley and Miller Company from further cutting of timber on lands owned by complainant, and the removal of logs stacked along the roadway, which were in part the product of such cutting. The theory upon which the equity of the bill rests has been often stated in our decisions, to the effect that the owner of timber lands is entitled to enjoy them in the state in which they were held and to have the benefit of the increment thereon. As stated by this Court in Williams v. Johns-Carroll Lumber Co., 238 Ala. 536, 192 So. 278, 282: "In this era of growing scarcity of standing timber, a tendency is toward protection of the owner by injunctive process, rather than leaving him to an action at law for money compensation." To like effect is Tidwell v. H. H. Hitt Lumber Co., 198 Ala. 236, 73 So. 486, L.R.A.1917C, 232, and Bradley v. Rumph, 239 Ala. 603, 196 So. 500.

As to defendant Headley, who was engaged in cutting the timber, removing and selling it contrary to complainant's instructions, the equity of the bill under these authorities is clear enough. As we have indicated Headley interposed no demurrer, and we are concerned here only with that interposed by the Miller Company. Counsel for appellant, in arguing the Miller Company demurrer, appear to assume that the averments as to defendant Headley are identical or similar to those concerning the Miller Company. But we do not so construe the bill. Reduced to the last analysis, the averment as to the Miller Company is that it purchased some of the timber from Headley. There are some logs stacked along the roadway, but the Miller Company is in no manner connected with these logs, had no participation in the cutting of the timber, and no intention to disturb the logs.

As observed in numerous cases, among the more recent, Penny v. Penny, Ala.Sup., 24 So.2d 912, a bill in equity must set forth every material averment of fact necessary to the right of recovery. Omitting any vague inference to the contrary, as we have above indicated, as to the Miller Company the bill merely discloses a purchase of some of the timber that was cut from the land—that and nothing more.

We are unable to see any impediment in the way of an action of trover if complainant is entitled to relief in this respect. The inadequacy of the remedy at law is the foundation of equity jurisdiction, and the bill as to the Miller Company fails to disclose any reason why an action at law for damages would not adequately compensate complainant. White v. Yawkey, 108 Ala. 270, 19 So. 360, 32 L.R.A. 199, 54 Am. St.Rep. 159.

Perhaps as to defendant Miller the pleader intended to allege more than here indi-

cated. But however that may be, the averments as to the Miller Company, as we construe the bill, fail to make out a case for equitable relief and is without equity, and upon this theory the demurrer was properly sustained.

True, the trial court's ruling appears to have been rested upon the failure of the bill to show notice to the Miller Company as to any lack of authority in Headley to sell him the lumber, and much of the argument is directed to that question. The conclusion we have reached renders unnecessary any elaborate consideration of this argument.

■ Of course, it is generally recognized that complainant in his initial pleading need not anticipate defensive matter. 30 C.J.S., Equity, § 212, p. 668; Town of Frisco City v. Green, 244 Ala. 176, 12 So.2d 409; National Southern Products Corp. v. City of Tuscaloosa, 246 Ala. 316, 20 So.2d 329; First National Bank v. Sproull, 105 Ala. 275, 16 So. 879.

■ And we might add that it is well settled that the question of bona fide purchaser is defensive matter. Barton v. Barton, 75 Ala. 400.

■ In the Barton case the rule is declared, that upon proof that the purchase was made in good faith and the purchase price paid, the burden of proof shifts to the opposing party to show that before the payment the purchaser had actual or constructive notice of such matters as would have defeated his right to the property. This well-understood rule has been recognized in subsequent decisions. Patton v. Darden, 227 Ala. 129, 148 So. 806; Taylor v. Burgett, 207 Ala. 54, 91 So. 786; Johnston v. Harsh, 207 Ala. 524, 93 So. 451; Marsh v. Elba Bank & Trust Co., 207 Ala. 553, 93 So. 604.

■ We are inclined to the view that Sec. 218(4), Title 8, Code 1940, Cum.Pocket Part, is not to be properly construed as affecting this settled rule, and we may add that the bill in the instant case, upon its face in this regard, made out a prima facie case for the Miller Company; i.e., purchase in good faith and payment of the purchase price.

■ But as we view it, this question of notice is not here involved. The bill distinctly alleges that the complainant was the sole owner of these logs and that Headley's only authority was to cut the logs and bring them to complainant's mill. In discussing Sec. 29, Title 57, Code 1940, this Court in the recent case of Hyatt v. Reynolds, 245 Ala. 411, 17 So.2d 413, calls attention to the fact that the foregoing section is but a statement of the elementary general rule that no one can transfer a better title than he himself has, with, of course, certain well-known exceptions, citing Bennett & Co. v. Brooks, 146 Ala. 490, 41 So. 149, 150, where the rule was quoted as follows: "One who, though acting in good faith, purchases a chattel from a person in possession, but without title or authority or indicia of authority, from the true owner to sell, acquires as against the true owner, no title, and the latter may maintain trover for its conversion."

■ As we have previously observed, the question now discussed is not necessary for decision in view of our conclusion that the bill is without equity. But it is proper to make reference thereto in view of the fact that the trial court interposed a penalty upon the complainant by a taxation of costs upon the theory the complainant's bill as amended did not meet the views of the court upon consideration of the demurrer to the original bill on this question of notice. Complainant has amended his bill by alleging that the deed to the property was on public record and that possession was in complainant. But as we have indicated, upon the averments of the bill no notice to the Miller Company was required to be alleged. We think it clear enough that no question of penalty was here involved and that the decree should be modified so as to eliminate that feature. As so modified, the decree will be here affirmed.

Modified and affirmed.

### Cross-Bill

Defendant Headley filed answer and cross-bill. Complainant's demurrer to the cross-bill was overruled, and from that decree an appeal is likewise here prosecuted.

In defendant Headley's cross-bill he denied ownership in complainant of the real

686

estate here involved, claiming himself to be the owner. There is no denial, however, that the deeds to the property were made to complainant, and that is where the legal title resides. His claim of ownership rests entirely upon what is shown to be an oral agreement.

In the cross-bill Headley claims the right to go upon the land and cut the timber by virtue of his ownership and the right to sell to whomsoever he pleases. His claim of ownership rests upon the allegations that in the year 1937 complainant corporation, through its president, made to him the proposition, that if he would agree to log in part complainant's Myrtlewood sawmill, complainant would advance all funds necessary for the purchase of timber and land as requested by respondent, the title to be taken in the name of complainant as security for the purchase price, and that a percentage of all timber cut would be credited against such purchase price. The cross-bill further avers that when all the funds which had been advanced to respondent by complainant for the purchase of timber lands had been fully paid to the complainant by respondent, complainant would, by appropriate instrument, reconvey the remaining timber and lands to respondent in fee simple. Cross-complainant avers that he accepted said proposition, and in pursuance thereof requested complainant to acquire for him the lands described in the bill; that the title to the land was taken pursuant to the alleged agreement in the name of complainant and under the circumstances alleged. Cross-complainant alleges that he is claiming the lands described in the bill in fee simple since their acquisition as above indicated.

In paragraph seven of the cross-bill it is alleged that in the particular territory where this property is located, it was the general custom among sawmill operators and log contractors (cross-complainant being a log contractor) for the sawmill operators to advance the cost of timber and land, the title to be taken as security in the name of the sawmill company, and that when the cost of purchase price had been fully repaid by logs or cash, the operators would then reconvey the remaining lands and timber to the logging contractor by an appropriate instrument; and that his acceptance of the offer made by complainant was in pursuance of this general logging and sawmill custom.

Cross-complainant further alleges that he has fully repaid all sums advanced to him by the complainant for the purchase of the described lands, and that he owes complainant nothing; that he has fully performed each covenant and agreement which he has made with reference to these lands, and that in equity he is entitled to specific performance.

In the amendment cross-complainant alleged that upon the purchase of the described lands he was put in possession by the vendor and by the complainant; that the obligation on his part to log in part complainant's mill consisted of the mutual agreement between said parties that the purchase price of said lands to be repaid complainant by defendant either in logs at the market price or in cash, or partly in each, at defendant's election; that defendant did log said mill in part until such time as he had repaid the total purchase price of all of said lands, and that defendant bought logs from other persons, selling said logs to complainant in order to pay off said purchase price; that he sold lumber to complainant to be applied to said purchase price, and erected a sawmill on or near said lands and cut certain of the timber off of said lands at said mill with full knowledge and approval of complainant; that complainant, through its president, had full knowledge defendant was claiming the said lands as his own.

 Counsel for cross-complainant make no insistence that the remedy by specific performance is due to be granted under the averments of the cross-bill. We think it clear enough that the terms of the contract are not set out with sufficient particularity and clearness to justify such relief, and that Mitchell v. Wright, 155 Ala. 458, 46 So. 473, is authority to this effect.

 There is, however, a general prayer for relief, and if the facts averred suffice for relief different from that specifically prayed, the cross-bill should be upheld. Borton v. Borton, 221 Ala. 544, 130 So. 67.

"Appropriate relief was available on the facts resulting from the general prayer, if the special prayer was not exactly appropriate." Pollak v. Millsap, 219 Ala. 273, 122 So. 16, 19, 65 A.L.R. 110.

The real insistence of counsel for appellee is that the cross-bill is sufficient upon the theory of what has, for convenience, been called "a trust in the nature of an equitable mortgage." Speaking of this character of relief, the Court in O'Rear v. O'Rear, 220 Ala. 85, 123 So. 895, 896, said: "When one person makes a loan to another with which to purchase lands, and by mutual agreement a deed is made directly from the vendor to the lender as security for the loan, the transaction partakes of the nature both of a resulting trust and a mortgage. A resulting trust, because the money loaned becomes that of the borrower, and the title acquired with his money is taken in the name of another; a mortgage, because it is given as security for the debt due from lender to borrower."

This decision calls attention to the full discussion of this equitable principle to be found in Pollak v. Millsap, 219 Ala. 273, 122 So. 16, 65 A.L.R. 110, where our former decisions were reviewed and distinguished. Still more recent decisions re-affirm the doctrine there recognized. Gunter v. Jones, 244 Ala. 251, 13 So.2d 51; Leonard v. Duncan, 245 Ala. 320, 16 So.2d 879. These authorities are to the effect that to invoke this equitable principle and to have a deed absolute in form declared a mortgage, there must be a continuing, binding debt from the mortgagor to the mortgagee to uphold it— a debt in its fullest sense. When there is no debt there can be no mortgage, and to establish a resulting trust the one claiming the trust must have furnished the funds for the purchase. The theory is that the money borrowed is in fact the money of the borrower, and the purchase therefore made with his own funds.

One having, however, no interest in the land, legal or equitable, at the time the deed was executed by the owner to a third party, cannot assert the rights of a mortgagor therein against the grantee solely by virtue of an oral agreement made by the grantee to convey the land to him upon payment of a certain sum. If it merely appears that the person who advanced the money to make the purchase was to take the title in himself with an option or privilege for the other to acquire the title or take the property off the other's hands by paying a certain amount of money, then the transaction is not a mortgage of the land, as in such a case an essential element of a mortgage is lacking; namely, a debt or obligation to be secured. If all the facts show an option to purchase merely, it will not be treated as a mortgage.

As we have previously observed, these principles are so well and clearly stated in the Pollak case, supra, and the authorities so thoroughly reviewed, as to render further discussion of these principles wholly unnecessary. We need but apply the principles to the facts set up in the amended cross-bill.

Counsel for Baker insist that the averments of the cross-bill are to be properly construed as disclosing that the lands were purchased with Baker's money, and not that of Headley, and for Baker's benefit; that there was no loan of money, and of consequence, no continuing debt. Of course, if the cross-bill is not to be properly construed as disclosing that the complainant lent the money to Headley for the purchase of this property as requested by Headley, then the money would not be Headley's, and of consequence, no resulting trust would follow. True, the proposition appears to have originated with Baker, but we do not conceive that this is a matter of controlling importance in considering this question of pleading, as the whole matter turns upon the agreement and intention of the parties. Did their minds meet upon a loan of money to Headley by complainant to be used for the purchase of this timber and land, as requested by Headley? The cross-bill so avers. True, the word "loan" is not used, but in its stead the expression "advance all funds necessary." This can only be reasonably interpreted as meaning a loan of money for this purpose. Expressions in Donaldson v. Wilkerson, 170 Ala. 507, 54 So. 234; Arthur v. Saunders, 9 Port. 626; and O'Rear v. O'Rear, 220 Ala. 85, 123 So. 895, indicate this view.

688

And in Morrow v. Turney's Adm'r, 35 Ala. 131, a case involving, as here, a resulting trust in the nature of a mortgage, the word "advanced" was interpreted as meaning a loan. The language of the opinion here pertinent is as follows: "The parties certainly meant, by an 'advance' of money, a loan."

In Pollak v. Millsap, supra, it was expressly stated that no promise or personal covenant on the part of the borrower to repay the money is required to make it a mortgage in equity. Of course, it is necessary that the transaction should be intended as security for a debt. And if the transaction was as set up in the cross-bill the law would imply a promise to repay without any express agreement to that effect. 41 C.J. p. 12.

Counsel for Baker appear to assume that the transaction was for Baker's sole benefit and upon his initiation. But we cannot so construe the cross-bill. Headley was a logging contractor. Baker's mill needed logs so that it might turn out lumber for the market. Clearly enough, Headley was interested in making a proper selection as to the land and timber so that if a surplus remained he would profit by his good judgment. Baker, as we have stated, was interested in having logs supplied to his mill as well as having the judgment of this logging contractor in the selection of the property to be purchased.

Headley avers that this contract was made in the light of the general custom of sawmill operators and logging contractors, and that Baker fully understood his claim of ownership in the property. He avers that the property was purchased by Baker at his request, the title being taken in the name of Baker as security for the purchase price, and that the purchase price of said lands might be repaid to Baker by Headley either in logs at the market price or in cash, or partly in each, at Headley's election. It is further averred that Headley did log said mill in part until such time as he had repaid to Baker, either in logs or in cash, the total purchase price of all the lands.

We are, therefore, of the opinion that the cross-bill is to be properly construed as disclosing a loan of money by Baker to Headley with the understanding and agreement of the parties that the lands would be purchased and paid for by the funds so lent, with the deed taken to Baker to be held as security for the purchase price. So viewing the cross-bill, the relation existing between Baker and Headley was that of mortgagor and mortgagee, and the relief to which Headley is entitled would be that growing out of the exercise of his equity of redemption. Such relief could be granted under his general prayer.

True, the cross-bill is emphatic in the statement that Headley had paid in full the purchase price as agreed and that he owed Baker nothing. Should it develop, however, that he was mistaken in this respect and there was a balance due, relief by way of redemption would be sought. The bill is deficient, viewed in this aspect, for a failure to disclose the purchase price or in what amounts the purchase price thereof was repaid by Headley to Baker. This defect is pointed by the sixth ground of demurrer filed to the original cross-bill and refiled to the cross-bill as amended. Of course, Headley should allege in his cross-bill an offer to do equity by the payment of any sum found to be due, if in fact it be ascertained that the full purchase price had not been paid. We find, however, no ground of demurrer taking that point.

It results, therefore, that for the defect herein indicated, the demurrer to the cross-bill as amended should have been sustained. The decree, therefore, overruling the demurrer to the amended cross-bill will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

Let the costs of this appeal be taxed equally against the appellant and appellee Headley.

Modified and affirmed as to the original bill.

Reversed and remanded as to the cross-bill.

FOSTER, LAWSON, and STAKELY, JJ., concur.