225 So.2d 799

**Elsie DORMAN et al.**

v.

**Robert KNAPP.**

**1 Div. 394.**

Supreme Court of Alabama.

May 1, 1969.

Rehearing Denied Aug. 14, 1969.

Edward P. Turner, Jr., Chatom, for appellants.

Scott & Porter, Chatom, for appellee.

COLEMAN, Justice.

Complainants appeal from a decree granting relief to a respondent on his cross bill wherein he seeks to have declared in his favor a resulting trust on a parcel of land.

Complainants commenced this suit by filing their bill of complaint praying that two parcels of land be sold for division of the proceeds of the sale among the complainants and respondents. There are four complainants and three respondents. They are the seven children of George W. Knapp, sometimes referred to as G. W. Knapp, and his wife, Mary, both of whom died prior to commencement of this suit. Complainants allege that complainants and respondents own the land as tenants in common and

that each owns an undivided one-seventh interest.

As to the land designated Parcel 1, the homeplace of G. W. Knapp, it is agreed that each complainant and respondent does own an undivided one-seventh interest and the appeal presents no question with respect to Parcel 1.

The respondent, Robert Knapp, filed a cross bill wherein he alleges that he owns Parcel 2 and that neither of the other two respondents and none of the complainants has any right in or claim to Parcel 2. The trial court found and decreed that Robert Knapp did own the entire interest in Parcel 2 by virtue of a resulting trust and that none of the other parties had any interest in Parcel 2. The complainants appeal and assign as error the decree granting relief to Robert Knapp.

G. W. Knapp, the father, died intestate on or about January 3, 1958. The mother died May 13, 1963. This suit was begun March 9, 1965.

The two respondents, other than Robert Knapp, have executed deeds conveying to him their respective interests in Parcel 2 and have suffered decrees pro confesso to be rendered against them in this suit. They take no part in the prosecution of this appeal. The contest on the appeal is between complainants and Robert Knapp. For convenience, we will sometimes refer to him as the respondent in the singular.

In January, 1946, J. H. Taylor and wife executed a deed conveying Parcel 2 to G. W. Knapp. The deed was recorded February 7, 1946.

The parties stipulated that Parcel 2 was assessed for taxation and payment made as follows:

"J. H. Taylor        1944–1946 inclusive
"G. W. Knapp      1947–1965 inclusive
"Robert C. Knapp  1960–1965 inclusive"

Complainants contend that Parcel 2, containing 107 acres, was owned by G. W.

Knapp and, at his death, descended to his seven children in equal shares.

Respondent Robert Knapp contends that he was the real purchaser of Parcel 2; that the purchase price was $2,000.00; that at the time of purchase in 1946, he paid $1,000.00 of the purchase price with his own money; that the other $1,000.00 was paid with money advanced by his father; that title was taken in the name of the father as security for the money advanced by the father; that the $1,000.00 advanced or loaned by the father was obtained by a loan from the Chatom State Bank; that the father and mother executed a mortgage to the bank to secure the loan; that the mortgage covered Parcel 2 and also Parcel 1; that the loan was subsequently refinanced by a mortgage to one Odom, and by a still later mortgage to the Federal Land Bank; that, in December, 1951, Parcel 2 was leased under an oil lease and that, thereafter until 1958, the rent from the oil lease was applied to pay the mortgage payments; that, after the father's death, respondent paid the entire balance of the mortgage debt to the Land Bank, which was $523.91; that, within a few months after the purchase in 1946, respondent terminated the tenancy of a tenant who was living on Parcel 2 at the time of purchase; that respondent moved into the house on Parcel 2 and lived on the land continuously thereafter except for a few months during which he tore down the old house and built a new house on Parcel 2 in 1957 or 1958; that respondent has lived in the new house since it was built and is living there now; that respondent has been in the possession of Parcel 2 since 1946 and has made improvements thereon; and that the father acknowledged respondent's ownership of Parcel 2.

Respondent contends that, under the facts and circumstances, the transaction created a resulting trust in his favor and that he is entitled to have Parcel 2 conveyed to him.

After hearing testimony ore tenus, the trial court denied the relief sought by complainants and decreed that "a resulting trust

was created in George W. Knapp in favor of Robert Knapp and upon payment of the final balance due of the $1,000.00 provided by the said George W. Knapp, that Robert Knapp was entitled to have . . . . Parcel Two . . . . conveyed to Robert Knapp." Complainants appealed.

Complainants assign for error the decree overruling their demurrer to the cross bill. They say the cross bill is insufficient to show that a resulting trust in favor of respondent was created because respondent failed to aver clearly and precisely that, at the time of purchase in 1946, he paid the purchase price or "had undertaken an absolute and binding obligation to pay" G. W. Knapp "a certain sum at a stipulated time or on the happening of a specified event." Duncan v. Leonard, 251 Ala. 333, 335, 37 So.2d 210, 211. The court said:

> "In order for a resulting trust to arise, one essential element is that, as a part of the original transaction, the consideration must · have come from the complaining party at or before the time of the conveyance of the property. There must have been either payment of the agreed consideration or an unconditional and binding promise to pay. Talley v. Talley, 248 Ala. 84, 26 So.2d 586 and cases cited; Milner v. Stanford, 102 Ala. 277, 14 So. 644; Lehman v. Lewis, 62 Ala. 129." (251 Ala. at 334, 37 So.2d at 211)

Also:

> " . . . . Persons seeking to establish a resulting trust in land must not only show that the consideration moved from them, but that it was paid contemporaneous with the purchase of the land. . . . ." Gandy v. Hagler, 245 Ala. 167, 171, 16 So.2d 305, 308.

Complainants argue also that the evidence is insufficient to support the decree. They say that the evidence fails to show that, at the time of purchase in 1946, G. W. Knapp made · a loan to Robert or that Robert made any promise or incurred any binding obligation to pay the balance of the

purchase price; that, on the contrary, the evidence affirmatively shows that Robert was not bound to pay and that he acquired at most merely a privilege to pay at his election; and, therefore, that he has failed to show a right to have declared a resulting trust in his favor as to Parcel 2.

Complainants also argue that Robert's claim is barred by laches.

■ The respondent has filed a motion to strike complainants' brief on the ground that they have argued their assignments of error in bulk. We do not think that the motion is well taken. The first section of complainants' argument in their brief is in support of assignments 1 and 2 which challenge the decree overruling demurrer to the cross bill. The second section of complainants' argument is in support of assignments 3 through 13 which assert that the evidence is insufficient to support the decree appealed from; and the third section of complainants' argument is in support of assignments in which the complainants assert that the court erred in declaring a resulting trust for that respondent, Robert Knapp, was guilty of laches. The motion to strike is denied.

We do not hold that the cross bill is sufficient against the grounds of demurrer insisted on, but pretermit consideration of that question and pass on to the second section of complainants' argument in which they assert that the evidence is not sufficient to establish a resulting trust in favor of respondent Robert Knapp.

With respect to bills to establish a resulting trust or an equitable mortgage, this court has stated certain principles as follows:

> "The real insistence of counsel for appellee is that the cross-bill is sufficient upon the theory of what has, for convenience, been called 'a trust in the nature of an equitable mortgage.' Speaking of this character of relief, the Court in O'Rear v. O'Rear, 220 Ala. 85, 123 So. 895, 896, said: 'When one person makes

a loan to another with which to purchase lands, and by mutual agreement a deed is made directly from the vendor to the lender as security for the loan, the transaction partakes of the nature both of a resulting trust and a mortgage. A resulting trust, because the money loaned becomes that of the borrower, and the title acquired with his money is taken in the name of another; a mortgage, because it is given as security for the debt due from lender to borrower.'

"This decision calls attention to the full discussion of this equitable principle to be found in Pollak v. Millsap, 219 Ala. 273, 122 So. 16, 65 A.L.R. 110, where our former decisions were reviewed and distinguished. Still more recent decisions re-affirm the doctrine there recognized. Gunter v. Jones, 244 Ala. 251, 13 So.2d 51; Leonard v. Duncan, 245 Ala. 320, 16 So.2d 879. These authorities are to the effect that to invoke this equitable principle and to have a deed absolute in form declared a mortgage, there must be a continuing, binding debt from the mortgagor to the mortgagee to uphold it—a debt in its fullest sense. When there is no debt there can be no mortgage, and to establish a resulting trust the one claiming the trust must have furnished the funds for the purchase. The theory is that the money borrowed is in fact the money of the borrower, and the purchase therefore made with his own funds

"One having, however, no interest in the land, legal or equitable, at the time the deed was executed by the owner to a third party, cannot assert the rights of a mortgagor therein against the grantee solely by virtue of an oral agreement made by the grantee to convey the land to him upon payment of a certain sum. If it merely appears that the person who advanced the money to make the purchase was to take the title in himself with an option or privilege for the other to acquire the title or take the property off the other's hands by paying a certain amount of money, then the transaction is not a mortgage of the land, as in such a case an essential element of a mortgage is lacking; namely, a debt or obligation to be secured. If all the facts show an option to purchase merely, it will not be treated as a mortgage." Henderson Baker Lbr. Co. v. Headley, 247 Ala. 681, 687, 26 So.2d 81, 86.

" . . . . To establish the proposition that the conveyance, 'absolute' in form, was in intention and in fact only a mortgage security, there must be a continuing binding debt from the mortgagor to the mortgagee to uphold it,—a debt in its fullest sense. Not a mere privilege reserved in the grantor to pay or not at his election, but a debt which the grantee can enforce as a debt, and for its collection may foreclose the conveyance as a mortgage. Where there is no debt there can be no mortgage; for, if there is nothing to secure, there can be no security. Eiland v. Radford, 7 Ala. 724; West v. Hendrix, 28 Ala. 226; Swift v. Swift, 36 Ala. 147; Peeples v. Stolla, 57 Ala. 53; Haynie v. Robertson, 58 Ala. 37; Logwood v. Hussey, 60 Ala. 417; Douglass v. Moody, 80 Ala. 61; Perdue v. Bell, 83 Ala. 396, 3 South.Rep. 698; 1 Jones, Mortg. § 267." Knaus v. Dreher, 84 Ala. 319, 320, 4 So. 287, 288.

With respect to the degree of proof required to establish a resulting trust or equitable mortgage this court has said:

"Cases of this class have been very often before this court, and it has been uniformly held that such claim may be established by parol proof, if sufficiently clear and strong to meet the requirements of the rule. But, to entitle a complainant to relief in such cases, the testimony must be clear, consistent, strong, and convincing. It has sometimes been said it must be stringent. McKinstry v. Conly, 12 Ala. 678; Chapman v. Hughes, 14 Ala. 218; Bryan v. Cowart, 21 Ala. 92; Brantley v. West, 27 Ala. 542; Harris v. Miller, 30 Ala. 221; Phillips v. Croft, 42 Ala. 477; Parks v. Parks, 66 Ala. 326; 2 Brick.Dig. 272, §§ 319, 320." Duncan

v. Leonard, supra; Knaus v. Dreher, supra.

This rule appears to be of long standing and unchallenged. It has been repeated as follows:

"As noted, equity will give relief by way of enforcing a resulting trust or a trust in the nature of an equitable mortgage only on clear and precise allegations strictly and convincingly supported by plain and unequivocal evidence. We have said that the proof must be so clear and convincing as to produce a conviction not disturbed by doubts,—'by evidence which places the question beyond reasonable controversy' (Edwards v. Rogers, 81 Ala. 568, 8 So. 229); by evidence so clear, strong, unequivocal and unmistakable as to establish the fact beyond reasonable doubt. Dooly v. Pinson, 145 Ala. 659, 39 So. 664, 668." (251 Ala. at 335, 37 So.2d at 211)

We have read and re-read the record in the instant case in an effort to ascertain whether there is evidence "so clear, strong, unequivocal and unmistakable as to establish the fact" that, at the time of purchase in 1946, Robert Knapp incurred an unconditional and binding obligation to pay to G. W. Knapp the one thousand dollars that G. W. Knapp had borrowed in 1946 and paid on the purchase price. There is testimony by several witnesses that during the period between 1946 and the date of G. W.

Knapp's death on January 3, 1958, he made statements to effect that the Taylor place was Robert's place, that Robert had paid $1,000.00 on it, and that: " 'If Robert ever gets the other thousand dollars, I'll make a deed to him.' "

We do not find, however, any evidence of a statement by G. W. Knapp to effect that Robert Knapp was absolutely and unconditionally bound to pay anything to G. W. Knapp ever or at any time. Robert Knapp himself testified that there was "no set time" when he expected to pay and that, if he had lived a hundred years, it would have been all right to pay it off after he "got to be a hundred." [1]

■ The evidence supports an inference that Robert Knapp paid $1,000.00 at the time of purchase in 1946, but we are of opinion that the evidence does not support an inference that he undertook an absolute and binding obligation to pay to his father any sum at any "set time" or ever. Under that view, no resulting trust was created in the entire Parcel 2 in 1946, and the court erred in deciding that such a trust had been created. The decree declaring that Robert Knapp owned the entire Taylor Place, Parcel 2, is due to be and is reversed.

We have carefully examined the authorities relied on by respondent and are of opinion that they are not in conflict with what we hold here.[2]

1. Robert Knapp testified:
"Q Did you claim to own it after you bought it from Mr. Taylor or after you paid the balance due on it?
"A I claimed to own it and expected a deed when I finished paying for it.
"Q When did you expect to finish paying for it, Mr. Knapp? That is what I would like to know.
"A When I got the money. There was no set time on it.
"Q And it took you from 1946 until 1959 to get able to pay one thousand dollars?
"MR. PORTER: I object. It was paid in 1958.
"Q Well, until 1958?
"A That is when I paid it.
"Q There was no set time before then?

"A No.
"Q Could you have took a hundred years?
"A I don't suppose I would live that long.
"Q If you had lived a hundred years, do you think it would have been all right to pay it off after you got to be a hundred?
"A I think it would have been all right."

2. In Shirley v. McNeal, 274 Ala. 82, 88, 145 So.2d 415, 420, the trial court " . . . found that the appellee, McNeal, paid the down payment and became obligated to pay the deferred installments"; and, without setting out the evidence, this court said "Such facts are

■ To constitute a resulting trust it is necessary to show payment by the one claiming the benefit of the trust, or an absolute obligation to pay, incurred by him as a part of the original transaction of purchase at or before the time of the conveyance. Hooks v. Hooks, 264 Ala. 66, 84 So. 2d 354.

" . . . . It is well settled, that if a trustee employs the moneys of the *cestui que trust* in making a purchase of lands, and takes to himself the conveyance of the legal estate, by operation of law a trust results to the *cestui que trust;* and a payment of part of the purchase-money will, to the extent of the payment, create a corresponding trust. But, to the creation of the trust, as was said by Chancellor KENT, in Botsford v. Burr (2 Johns. Ch. 414), 'the trust must have been coeval with the deeds, or it can not exist at all. * * * The resulting trust, not within the statute of frauds, and which may be shown without writing, is when the purchase is made with the proper moneys of the *cestui que trust,* and the deed not taken in his name. The trust results from the *original transaction,* at the time it takes place, and at no other time; and it is founded on the *actual payment of money,* and on no other ground. It can not be mingled or confounded with any subsequent dealings whatever. They are governed by different principles; and the doctrine of a resulting trust would be mischievous and dangerous, if we once departed from the simplicity of the rule.' " Coles v. Allen, 64 Ala. 98, 106.

■ It appears to be conceded that Robert Knapp furnished one-half of the purchase money in 1946, and to that extent, a trust in his favor resulted in an undivided one-half interest in Parcel 2. Sanders v. Steele, 124 Ala. 415, 26 So. 882.

"Where one party's money is used in payment of property and title is taken in the name of another, there is a presumption of a resulting trust in favor of the party whose money was used to the extent of the sum so used. Lamar v. Lamar, 263 Ala. 391, 82 So.2d 558; Adams v. Griffin, 253 Ala. 371, 45 So.2d 22; Wilson v. Wilson, 257 Ala. 135, 57 So.2d 519; Jacksonville Public Serv. Corp. v. Profile Cotton Mills, 236 Ala. 4, 180 So. 583; 4 Pomeroy, Equity Jurisprudence, §§ 1037, 1038." Ryan v. Ryan, 267 Ala. 677, 680, 104 So.2d 700, 702.

The trial court should decree that a trust in an undivided one-half interest in Parcel 2 was created in favor of Robert Knapp at the time of purchase in 1946. The other one-half interest was acquired by G. W. Knapp and, at his death, descended to his seven children. Robert Knapp is one of those children and inherited an undivided one-fourteenth interest from his father.

sufficient basis for the relief granted in the decree."

In Hodges v. Verner, 100 Ala. 612, 13 So. 679, this court affirmed a decree overruling demurrer to bill to establish a resulting trust. In neither of the five grounds of demurrer nor in the opinion is the point raised whether the one claiming the benefit of the trust had undertaken an absolute and binding obligation to pay.

In Leonard v. Duncan, 245 Ala. 320, 16 So.2d 879, this court affirmed a decree overruling demurrer. On the second appeal from the final decree in Duncan v. Leonard, 251 Ala. 333, 37 So.2d 210, from which we have already quoted at length, this court affirmed a decree denying relief.

In Gunter v. Jones, 244 Ala. 251, 13 So.2d 51, the question whether the beneficiaries became unconditionally and absolutely bound to pay is not discussed.

In Albae v. Harbin, 249 Ala. 201, 205, 30 So.2d 459, 461, this court said:

" . . . . When Deloney signed the contract of purchase for her use and benefit and she obligated herself as a part of the transaction to pay the down payment and all future installments, as between her and Deloney she 'was the party bound to make the stipulated deferred payments.' . . . . "

We have quoted the rule stated in Henderson Baker Lbr. Co. v. Headley, 247 Ala. 681, 26 So.2d 81.

As we understand them, the other authorities cited by respondent do not pertain to the question of the beneficiary's obligation to pay.

He has deeds to an additional two-fourteenths from a sister and a brother. Thus he is entitled altogether to ten-fourteenths of Parcel 2. The four complainants are entitled to the other four-fourteenths.

In an amendment to his answer and cross bill, Robert Knapp avers that he has cut timber from Parcel 2 of the value of $381.-56. On final accounting, he should be charged with the value of complainants' share of this timber.

It appears that Robert Knapp paid $523.-91 to satisfy the Land Bank mortgage. On final accounting, he is entitled to credit for this payment.

The decree appealed from is reversed and the cause remanded with directions that the trial court enter a decree conforming to this opinion and that further proceedings consistent herewith be had as may be appropriate.

Reversed and remanded with directions.

LIVINGSTON, C. J., and SIMPSON and BLOODWORTH, JJ., concur.

### ON REHEARING.

COLEMAN, Justice.

On application for rehearing, Robert Knapp asks that we order the trial court to hold such hearings and render such orders as are appropriate to give to Robert Knapp that part of the land on which he erected the house; or, if the land cannot be partitioned and is ordered sold for division of the proceeds, that he be reimbursed for the improvements he made on the land.

As we understand the record, no issue as to his right to reimbursement for improvements was presented on the original trial. Such an issue was not presented in this court on submission here. On the record before us, we are not prepared to decide whether he is entitled to such reimbursement, whether the land can be equitably partitioned among the tenants in common, or what is the proper amount to be allowed

for any enhancement in the value of the land which resulted from the improvements.

On original deliverance, we directed that a decree be entered conforming to the opinion and that further proceedings consistent with the opinion be had as may be appropriate.

We will not undertake to prescribe what those further proceedings should be with respect to Robert Knapp's claim for reimbursement. We will say that, so far as we are presently advised, we know no reason why he cannot now present to the trial court proper pleading and proof so that that court may determine whether Robert Knapp is entitled to reimbursement, and, if so, the manner and amount in which he should be reimbursed.

Opinion extended.

Application for rehearing overruled.

SIMPSON, HARWOOD and BLOODWORTH, JJ., concur.