MAIN, Justice.
On May 28, 2008, Kimberly J. Bond sued her former attorney, James D. McLaughlin, alleging legal malpractice under the Alabama Legal Services Liability Act, § 6-5-570 et seq., Ala. Code 1975. The Lee Circuit Court (“the trial court”) entered a summary judgment in favor of McLaughlin. Bond appeals.
Facts and Procedural History
In February 2006, Bond hired McLaughlin to, provide, legal services involving the estate of her husband, Kenneth D. Pylant II, who was killed in a motorcycle accident on September 5, 2005. According to the complaint in .the present case, McLaughlin failed to properly contest a copy of Pylant’s will that was admitted to probate on November 29, 2005, and, as a proximate result of McLaughlin’s breach of duty, Bond was injured and suffered damage.
In Bond v. Pylant, 3 So.3d 852 (Ala. 2008), this Court addressed the will contest filed by McLaughlin on Bond’s behalf. In that case, this Court held that Bond’s will contest filed in the probate court after the will had been admitted to probate was a nullity and could not be transferred to the circuit court and that,her will contest filed in the circuit court was untimely. This Court set forth the facts and procedural history of the case as follows:
“Kenneth D. Pylant II died on September 5, 2005. When he died, Kenneth *763 was married to Kimberly Bond; he had four children from a previous marriage, two of whom were minors. Subsequently, James Sprayberry, as executor of Kenneth’s estate, filed a petition in the Lee County Probate Court seeking to admit to probate a copy of Kenneth’s will, which Sprayberry alleged had been lost or destroyed. Apparently, Sprayber-ry, who is an attorney, had a copy of an unexecuted will he had prepared on Kenneth’s behalf, which he asserted was a copy of the will Kenneth executed.... On November 29, 2005, the probate court held a hearing and that same day entered an order admitting the copy of the lost will to probate.
“On April 26, 2006, Bond filed in the probate court a ‘Complaint contesting the Will.’ That same day, Bond also filed in the probate court a motion to transfer the will contest to the circuit court pursuant to § 43-8-198, Ala. Code 1975. On May 2, 2006, the probate court purported to transfer the will contest to the circuit court by having someone take the file to the circuit court clerk’s office. A member of the probate court’s staff informed Bond’s counsel that there was no order of transfer. On May 30, 2006, the probate court entered an order again purporting to transfer the will contest to the circuit court.
“On June 9, 2006, Bond filed a complaint in the circuit court contesting the will. On June 16, 2006, Sprayberry, as executor, along with Kenneth’s two adult children, filed an answer and moved to dismiss the complaint filed in the circuit court on the ground that the circuit court lacked subject-matter jurisdiction over the matter. On November 30, 2006, the circuit court entered an order dismissing Bond’s complaint for lack of subject-matter jurisdiction because Bond failed to file her will contest in the circuit court within six months after the will-was admitted to probate as required by § 43-8-199, Ala. Code 1975. Bond timely appealed.”
3 So.3d at 853-54 (footnotes omitted). This Court affirmed the judgment of the circuit court dismissing Bond’s will contest for lack of subject-matter jurisdiction. 3 So.3d at 855.
After the dismissal of Bond’s will contest was affirmed on appeal, pursuant to a petition filed by the executor, the administration of Pylant’s estate was removed from the probate court- to the circuit court in January 2009. Following a bench trial at which it received evidence ore tenus, the circuit court, on October 27, 2009, entered a judgment that, among other things, determined who was entitled to certain disputed land . and concluded that Pylant’s estate was not responsible for paying certain debts Pylant and Bond owed at his death. The circuit court’s order stated, among several other things, that “the Court finds that the will at issue in this case is also valid.” One of the three children Pylant and Bond had together appealed the circuit court’s judgment insofar as it determined who was entitled to the disputed land. Bond appealed the circuit court’s judgment insofar as it determined who was entitled to the disputed land and whether the estate was responsible for debts Pylant and she owed at his death. Pylant’s former wife, Bethany. Pylant, cross-appealed insofar as the circuit court’s judgment determined who was entitled to the disputed land. After consolidating the appeals and the cross-appeal, the Court of Civil Appeals stated:
“CW]e reverse the judgment of the circuit court insofar as it concluded that the separation agreement did not divide the 71.73-acre parcel and the 15-acre parcel between Pylant and Bethany before Pylant’s death; we reverse the judgment insofar as it concluded that *764 Bethany was entitled to an undivided one-half interest in the 71-73-acre'parcel and the 15-acre parcel- and that [the four children Pylant,and Bethany had together] were each entitled to an undivided one-eighth interest in the 71.73-acre parcel and the 15-acre parcel; we affirm the judgment of the circuit court in all other respects; and we remand the action to the circuit court for further proceedings consistent with this opinion.”
Bond v. Estate of Pylant, 63 So.3d 638, 647 (Ala. Civ. App. 2010). The circuit court’s statement that the “will at issue,” i.e., the copy of the last will, is valid was not addressed on appeal in the Court of Civil Appeals,
, In the present legal-malpractice action, McLaughlin conceded that he failed to properly file the will contest and, thus, that he breached the applicable standard of care. However, McLaughlin moved for a summary judgment,' arguing that Bond could not prove that, but for McLaughlin’s negligence, she would have received a more favorable result in the underlying case. Specifically, McLaughlin argued that Bond failed1 to show that her will contest would have been successful. Moreover, McLaughlin argued that Bond’s claim that the will -was invalid is barred by the doctrine of res judicata because, 'he says, in a prior judgment, the circuit court stated that “the will at issue in this case is also valid.” Bond filed a response opposing McLaughlin’s motion for a summary judgment and arguing that there was substantial evidence creating a genuine issue of material fact concerning whether a properly filed will contest would have been successful.- Specifically, Bond argued that there was substantial evidence indicating that Pylant had revoked the will. That evidence consisted of Bond’s testimony that Pylant told her he had destroyed the will and intended to make a new will and Bethany’s testimony that Pylant also told her he had destroyed the. will. Bond also contended that her claim was not barred by the doctrine of res judicata.
It is undisputed that James Sprayberry, an attorney and the executor of Pylant’s estate, prepared a will for Pylant and that Pylant executed that will on March 19, 2001. According to Sprayberry’s deposition testimony, he gave Pylant the executed will and told him to put it in his safe-deposit box or some other safe place. Sprayberry . also told Pylant not to attempt to amend or revoke the will without contacting him or another attorney. Sprayber-ry kept a copy of the will for his records. Between the execution of the will in 2001 and Pylant’s death in 2005, Pylant and Sprayberry saw and spoke to each other a few times a month at the post office. Py-lant never mentioned to Sprayberry that the will had been destroyed or revoked.
After Pylant’s death, Sprayberry' and Bond together searched Pylant’s safe-deposit box for the will, but they did not find it. Bond also- searched Pylant’s office for the will, but she did not find it.
In the probate court’s order admitting the lost will to probate, the court stated that “testimony was taken ore tenus” and that “[t]here was no evidence, according to Dr. Bond, that the original will was destroyed, cancelled or revoked.” In her deposition in the present case, when asked about that statement in the probate court’s order, Bond testified: “[Pylant] told me he destroyed his will, but I don’t have any physical evidence of that ,.. other than he told me that. I don’t have the will shredded. It was not shredded before me.” Bond also testified that she, was not represented by counsel, at the probate .hearing. Bond maintained throughout her deposition testimony that. Pylant told her that he had destroyed the will and that he intended to *765 make a new will. In the 2009 proceedings in the circuit court, Bethany testified that Pylant also told her that he destroyed the will.
On August 25, 2016, the trial court entered a summary judgment in favor of McLaughlin. The court held that Bond failed to prove that, but for McLaughlin’s negligence, she would have received a better result in the underlying proceeding and that Bond’s claim was barred by the doctrine of res judicata.
Standard of Review
“We review a summary judgment de novo. Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala. 2002) (citing American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala. 2002)).
“ ‘ ‘We apply the. same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once, a party moving for a summary judgment establishes that no genuine issue of material fact exists, the.burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the. exercise of impartial judgment can reaspn-ably infer the existence of the fact sought to be proved.’ In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.” ’
“844 So.2d at 545 (quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala. 2000)) (citations omitted).
“Summary judgment is appropriate only when there is no genuine issue of any material fact and the moving party is. entitled to judgment as a matter of law. Rule 56(c)(3), .Ala. R. Civ. P.”
Hooper v. Columbus Reg'l Healthcare Sys., Inc., 956 So.2d 1135, 1139 (Ala. 2006).
Discussion
On appeal, Bond contends'that the trial court erred in entering a summary judgment in- favor of McLaughlin on her legal-malpractice claim. Specifically, Bond argues that she presented substantial evidence creating a genuine issue of material fact concerning whether thé will contest in the underlying action, had it been properly filed, would have been successful and that her claim is not barred by the doctrine of res judicata.
L
First, Bond argues that the trial court erred in, entering a summary judgment in favor of McLaughlin on her legal-malpractice claim because McLaughlin conceded that he breached the applicable standard of care in the underlying will contest and because, Bond says, she presented substantial evidence that her will contest would have been successful.
“A plaintiff in a legal malpractice action must prove the same basic elements as in a negligence action: duty, breach, proximate cause, and damage[].” Pickard v. Turner, 592 So.2d 1016, 1019 (Ala. 1992).
“To prevail'in a legal-malpractice action, the plaintiff must prove that, but for' the attorney’s negligence, the legal matter concerning which the attorney is alleged to have been negligent would have, been resolved more favorably to the plaintiff. Pickard v. Turner, 592 So.2d 1016, 1019 (Ala. 1992). To meet this burden, the plaintiff must prove (1) that, in the absence , of the alleged malpractice, the plaintiff would have been entitled to a more favorable result in the *766 legal matter concerning which the attorney is alleged to have' been negligent, and (2) that the attorney’s negligence in fact caused the outcome of the legal matter to be less favorable to the plaintiff than the outcome would have been in the absence of the alleged malpractice. Pickard, 592 So.2d at 1020 (‘ “Generally, actionable [legal] malpractice cannot be established in the absence of a showing that the attorney’s wrongful conduct has deprived the client of something to which he would otherwise have been entitled.” [7A C.J.S. Attorney and Client § 255 at 462 (1980).] A lawyer cannot be expected to achieve impossible results for a client.’); Hall v. Thomas, 456 So.2d 67, 68 (Ala. 1984) (‘A claim for malpractice requires a showing that in the absence of the alleged negligence the outcome of the case would have been different.’ (citing Mylar v. Wilkinson, 435 So.2d 1237 (Ala. 1983))).”
Bonner v. Lyons, Pipes & Cook, P.C., 26 So.3d 1115, 1120 (Ala. 2009).
In the present case, it is undisputed that McLaughlin breached the applicable standard of care in the underlying will contest. Thus, we must decide only whether Bond presented substantial evidence that, but for McLaughlin’s breach, the will contest would have- been resolved more favorably to her. That issue hinges on whether Bond presented substantial evidence that Pylant had revoked the will admitted to probate and, thus, that a copy of the revoked will should not have been probated as a lost will.
Section 43-8-136(b), Ala. Code 1975, provides, in relevant part: “A will is revoked by being burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence by his consent and direction.”
In Stiles v. Brown, 380 So.2d 792 (Ala. 1980), this Court stated:
“The fact that the will left in the testator’s possession cannot be found after his death creates a presumption that the will was destroyed by the testator animo revocandi, or with intent to revoke. The presumption referred to is not an irrebuttable conclusion of law; it is a mere inference of fact. Our cases clearly hold that this presumption of revocation or inference of fact is rebuttable and the burden of rebutting the presumption is on the proponent of the will.”
380 So.2d at 795 (internal citations omitted).
In the present case, assuming that, through .Sprayberry’s testimony and the statement in the probate court’s order admitting the lost will to probate that Bond had offered no evidence indicating that the will had been revoked, McLaughlin presented evidence sufficient to overcome the rebuttable presumption that the lost will was revoked, the burden then shifted to Bond to present substantial evidence that the will had been revoked. Bond presented her testimony and Bethany’s testimony that Pylant told them, separately, that he had destroyed the will. These statements are admissible under an exception to the hearsay rule. See Rulé 803(3), Ala. R. Evid. (providing that the following is not excluded by the hearsay rule: “A statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant’s will.”). Pylant’s alleged statements to Bond and Bethany constitute “evidence of such weight and quality that fair-minded persons in the ex *767 ercise of impartial judgment can reasonably infer” that Pylant had revoked the ■will. Thus, Bond has presented substantial evidence creating a genuine issue of material fact tó be resolved by the finder of fact.
We note that McLaughlin and the trial court in its summary-judgment order place-great emphasis on the fact that Bond must ultimately prove that the result of the underlying proceeding—the mil contest— “would” have been different, rather than “may” have been different. At' the summary-judgment stage in the present case, it is true that Bond was required to present “substantial evidence” that the result of the underlying proceeding “would” hávé been different, but she did not have to present undisputed evidence or definitively prove that the result of the underlying proceeding would have been different. At this stage, Bond was required to present evidence from which' the finder of fact could infer that the result of the underlying proceeding would have been different. We hold that Bond has presented such evidence.
II.
Lastly, Bond contends that the trial court erred in determining that her claim was barred by the doctrine of res judicata.
This Court has stated: “Both collateral estoppel and res judicata are affirmative defenses; thus, the party raising the defense has the burden of proving each element.” Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So.2d 507, 516 (Ala. 2002).
“[R]es judicata and collateral estoppel are two closely related, judicially created doctrines that preclude the relitigation of matters that have been previously adjudicated or, in the case of res judica-ta, that could have been adjudicated in a prior action.
“ ‘The doctrine of res judicata, while actually embodying two basic ■ concepts, usually refers to what commentators label “claim preclusion,” while collatéral estoppel ... refers to “issue preclusion,” which is a subset of the broader res judicata doctrine.’
“Little v. Pizza Wagon, Inc., 432 So.2d 1269, 1272 (Ala. 1983) (Jones, J., concurring specially). See also McNeely v. Spry Funeral Home of Athens, Inc., 724 So.2d 534, 537 n.1 (Ala. Civ. App. 1998). In Hughes v. Martin, 533 So.2d 188 (Ala. 1988), this Court explained the rationale behind the doctrine of res judicata: ■
“ ‘Res judicata is a broad, judicially developed doctrine, ‘which rests upon the ground that public policy, and the interest of the litigants alike, mandate that there be an end to litigation; that those who have contested an issue shall be bound by the ruling of the court; and that issues once tried shall be considered forever settled between those same parties and their privies.’
“533 So.2d at 190. The elements of res judicata are
“ ‘(1) a prior judgment on the merits, (2) rendered by a court of competent 'jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions.’
“Equity Res. Mgmt., Inc. v. Vinson, 723 So.2d 634, 636 (Ala. 1998). ‘If those four elements are present, then any claim that was,' or that could have been, adjudicated in the prior action is barred from further litigation.’ 723 So.2d at 636. Res judicata, therefore, bars a party from asserting in a subsequent action a claim that it has already had an opportunity to litigate in a previous action.
“The corollary to the above-stated rationale is that the doctrine of res judica-ta will not be applied to bar a claim that *768 • could not have been brought in a prior action. Old Republic [Ins. Co. v. Lanier], 790 So.2d [922] at 928 [ (Ala.2000) ], See also United States v. Maxwell, 189 F.Supp.2d 395, 406 (E.D. Va. 2002); Restatement (Second) of Judgments, § 26(l)(c) (1982), Restatement (Second) of Judgments, §. 51(l)(a). ‘In order for a judgment between the same parties to be res. judicata,-it must, among other things, ... involve a question that could .-have been litigated in the former cause or proceeding.’ Stephenson v. Bird, 168 Ala. 363, 366, 53 So. 92, 93 (1910). See also Dekle v. Vann, 284 Ala. 142, 223 So.2d 30 (1969), in which this Court held that a prior judgment in equity ordering the defendants to open a wall adjacent to the plaintiffs land was not res judica-ta in. a subsequent action seeking damages for trespass, because the equity court lacked jurisdiction to award punitive damages.”
Saad, 851 So.2d at 516-17 (footnotes omitted),
In the present ease, McLaughlin has the burden of proving the .affirmative defense of res judicata. His argument rests on the following ■ statement found in the circuit court’s 2009 order: “Moreover, the court finds that the will at issue in this case is valid.” The first paragraph, of that order, which was quoted by the Court of Civil Appeals in Bond v. Estate of Pylant, states:
“ ‘[T]he Court finds that a valid and binding order was entered on or about January 26, 1994 divorcing [Pylant] and [Bethany], Additionally, no common-law marriage was established after that date between [Pylant] and [Bethany], Moreover, the Court finds that the will at issue in this case is also valid.’ ”
63 So.3d at 642.
It is unclear from the circuit court’s order exactly why it stated that the will was valid. It appears that, among several issues in that case, the only contention concerning the validity. of the will was made by Bethany. Bethany had argued that she and Pylant had established a common-law marriage after their December 26, 1994, divorce and that they were still legally married at the time of his death. Thus, she alleged that the will was , invalid so that, if .the circuit court found that she and Pylant were,still married at the time of his death, she could inherit as the surviving spouse under the laws of intestate succession. However, immediately ¿preceding its statement that the will is valid, the circuit court explicitly found that Bethany and Pylant were not married,at. the time of his death. Therefore, because the. circuit court found that Bethany and Pylant were not married at the time of his death, the court’s statement that, “the will at issue in this case is valid” was . unnecessary to resolve any argument that-was before it and was therefore dictum. .
Furthermore, as this Court recognized in Bond v. Pylant, “ ‘[a] circuit court’s jurisdiction over a will contest is statutory and limited.’” 3 So.3d at 855 (quoting Forrester v. Putman, 409 So.2d 773, 775 (Ala. 1981)).
“ ‘In Alabama, a will may be contested in two ways: (1) under § 43-8-190, Ala. Code 1975, before probate, the contest may be instituted in the probate court or (2) under § 43-8-199; Ala. Code 1975, after probate and within six months thereof, a contest may be instituted by filing a complaint in the circuit court of the- county in which the will was probated.’ ”
Bond v. Pylant, 3 So.3d at 854 (quoting Stevens v. Gary, 565 So.2d 73, 74 (Ala. 1990)).
Bond did not contest the will before probate, and, because of McLaughlin’s *769 negligence, she did ' not properly contest the will within six months after probate by filing a complaint in the circuit court. Likewise, there is no indication that Bethany contested the will under § 43-8-19.0, Ala. Code 1975, before probate or under § 43-8-199, Ala. Code 1975, after probate. Therefore, no will contest- was before the circuit court when it administered the estate and issued its 2009 order. In fact, the circuit court would not have had jurisdiction to hear a contest to Pylant’s will at that time. As stated in Saad, supra, “[t]he-doctrine of íes judicata will not be applied to bar a claim that could not have been brought in a prior action.” 851 So.2d at 517. In the present situation, a will contest was not before the circuit court during the administration of Pylant’s estate in 2009 and could not have been raised in the circuit court during those proceedings. Therefore, the same, cause of action was not presented in that prior case and in the present case; thus, that prior action is not res judicata in the present action.
Conclusion
Based on the foregoing, we reverse the trial court’s judgment and remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, Bolin, Parker, Murdobk, Shaw, Wise, and Bryan, JJ., concur.