MAIN, Justice.
Alan Newell appeals from a summary judgment entered against him on various claims and counterclaims relating to two tracts of real property located in Franklin County. For the following reasons, we reverse and remand.
I. Facts and Procedural History
This appeal arises from a dispute between a father, Floyd Newell, and his son, Alan, regarding the ownership of two tracts of land located in Franklin County. The two tracts are farmland referred to, respectively, as "the Hester farm" and "the DeVaney farm."[1] Floyd is the title owner of the two properties. Alan, however, claims to be the true owner of the properties and asserts that the properties were deeded to Floyd only as security for loans Floyd made to Alan to purchase the land.
On February 21, 2013, Floyd sued Alan, asserting claims of ejectment and detinue. Specifically, Floyd alleged that Alan was unlawfully withholding possession from Floyd of the Hester farm and the DeVaney farm, as well as a number of items of personal property allegedly belonging to Floyd. Alan filed a counterclaim that also alleged claims of ejectment and detinue. Alan contended that it was, in fact, Floyd who had wrongfully obtained possession of the Hester farm and the DeVaney farm and who was precluding Alan's rightful access to the properties. Alan also contended that Floyd was wrongfully withholding various items of Alan's personal property. Alan subsequently amended his counterclaim to add counts seeking a declaration of an equitable mortgage for both the Hester farm and the DeVaney farm. Alan contended that he purchased each property with a loan from Floyd and that the deed to each property was placed in Floyd's name as security for purchase-money loans.
Floyd moved for a summary judgment as to the ejectment and equitable-mortgage counterclaims, contending that there was no genuine issue as to any material fact regarding the ownership of the two properties. The deposition testimony of Floyd and Alan was submitted in support of and in opposition to the summary-judgment motion. That testimony is hopelessly at odds.
Alan testified that the Hester farm was purchased in 1992. He claims that, upon learning that the farm was for sale, he arranged financing to purchase the property from a local bank. According to Alan, before the closing on the sale of the property, Floyd offered to finance the purchase so long as Alan agreed to repay the full purchase price of $65,000, plus $5,000 in interest. Alan says that, at the time of purchase, he paid Floyd $35,000 toward the purchase price. According to Alan, the title to the Hester farm was placed in Floyd's name as security for the loan *880 Floyd made to Alan. Alan claims that he made payments toward the loan and that it was paid off in 1999. Alan also claims that he was in possession of the Hester farm following its purchase. He testified that he raised cattle on the Hester farm for several years; that he built an entrance to the farm secured by a gate; that he paid half the cost of constructing a barn on the farm; and that he placed a mobile home and a camper on the farm.
As to the DeVaney farm, Alan contends that he also purchased this property through a loan from Floyd and that the title to the DeVaney farm was, like the Hester farm, held by Floyd as security for the loan. Alan testified that the property was purchased at auction in 1995 for $89,000. Alan contends that repayment of the loan he used to purchase the DeVaney farm was accomplished by the withholding of $10,000 in annual compensation that he was allegedly due from the family business. Specifically, he claims that he was a partner in Floyd's heating and air-conditioning business and that, as part of his compensation, the company was making a $10,000 per year contribution into a retirement account established for Alan. Alan claims that he and Floyd agreed that Floyd would withhold the retirement contribution for nine consecutive years to pay off the loan. Alan states that he kept cattle on the DeVaney farm; that he cut, hauled, and stored hay on the farm; that he built a fence and gates around the farm; and that he paid for all the improvements to the farm.
Floyd flatly denies Alan's claim of ownership of the two farms. Floyd contends that he purchased both the Hester farm and the DeVaney farm and that he owns the farms outright. He denies lending Alan money to purchase the properties. He denies that Alan made any payments to him toward the purchase price of the farms. He disputes claims that Alan made improvements to the farms. He denies that Alan was a partner in his heating and air-conditioning business or that any retirement account or contribution was ever set up for Alan or that he received any payment from Alan through withholding such funds. Floyd admits to no more than allowing Alan to use the properties in varying degrees over the years.
On August 3, 2015, the trial court entered a partial summary judgment in favor of Floyd as to the ejectment claim and counterclaim and as to Alan's claim seeking recognition of an equitable mortgage. The trial court specifically held that the basis for Alan's claim of ownership of the two tracts of real property was barred by the Statute of Frauds. On May 15, 2017, the trial court entered a final judgment disposing of all remaining claims. This appeal followed.
II. Standard of Review
Alan's appeal concerns only the claims disposed of by the partial summary judgment. Our review of a summary judgment is de novo. Tanner v. State Farm Fire & Cas. Co., 874 So.2d 1058, 1063 (Ala. 2003). In reviewing a summary judgment, we apply the same standard used by the trial court-whether there has been a showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bond v. McLaughlin, 229 So.3d 760 (Ala. 2017). Moreover, we review all evidence in the light most favorable to the nonmovant. Foster v. North Am. Bus Indus., Inc., 236 So. 3d 70 (Ala. 2017).
III. Analysis
On appeal, Alan argues that there are material facts in dispute concerning his interest in the Hester farm and the DeVaney *881 farm such that a summary judgment on the ejectment and equitable-mortgage claims was improper. Specifically, he contends that he presented sufficient evidence to support his equitable-mortgage claim. Further, he contends that his equitable-mortgage claim is not subject to the Statute of Frauds. Floyd, on the other hand, contends that the trial court properly concluded that the Statute of Frauds barred Alan's claims and also questions the sufficiency of the evidence submitted by Alan in response to the motion for a summary judgment.
It is clear from Alan's pleadings and from the arguments made in this Court and in the trial court that what Alan terms an "equitable mortgage" is what this court has long recognized as a "resulting trust in the nature of an equitable mortgage."
"When one person makes a loan to another with which to purchase lands, and by mutual agreement a deed is made directly from the vendor to the lender as security for the loan, the transaction partakes of the nature both of a resulting trust and a mortgage. A resulting trust, because the money loaned becomes that of the borrower, and the title acquired with his money is taken in the name of another; a mortgage, because it is given as security for the debt due from lender to borrower.
"For convenience this court has come to call it a trust in the nature of an equitable mortgage. For purposes of equitable relief it is treated as a mortgage. It is not subject to the statute of frauds."
O'Rear v. O'Rear, 220 Ala. 85, 86, 123 So. 895, 896 (1929). Stated another way:
"[W]hen complainant procures a loan of the funds from respondent, such funds belong to complainant, although provided by respondent; and that when title is taken in respondent as security for the loan, the respondent is held to receive the title in trust, and as complainant provided the funds it is a resulting trust in the nature of a mortgage, and the statute of frauds does not apply."
Pollak v. Millsap, 219 Ala. 273, 276, 122 So. 16, 19 (1928). See also Dorman v. Knapp, 284 Ala. 387, 390, 225 So.2d 799, 801-02 (1969) ; Holman v. Weed, 248 Ala. 179, 181, 26 So.2d 721, 722 (1946) ; Leonard v. Duncan, 245 Ala. 320, 322-23, 16 So.2d 879, 881 (1944) ; and Gunter v. Jones, 244 Ala. 251, 253, 13 So.2d 51, 53 (1943).
A resulting trust in the nature of a mortgage arises by implication of law and is therefore not subject to the Statute of Frauds. See, e.g., § 19-3B-1301, Ala. Code 1975 ("No trust concerning lands, except such as results by implication or construction of law, ... can be created, unless by instrument in writing ...."); McClellan v. Pennington, 895 So.2d 892, 897 (Ala. 2004) ; and Perryman v. Pugh, 269 Ala. 487, 493, 114 So.2d 253, 259 (1959) ("The equity sought to be enforced under the trust aspect is one which arises by operation of law and is not dependent upon a contract; hence, the statute of frauds is no obstacle to the establishment of such trust.").
In this case, because the Statute of Frauds is not applicable to a claim seeking a declaration of a trust in the nature of an equitable mortgage, the summary judgment entered on that basis was in error.[2]
*882 Furthermore, nearly every fact relevant to Alan's counterclaim seeking an equitable mortgage is disputed. Alan maintains that Floyd loaned him the money to purchase the Hester farm and the DeVaney farm and took the deeds to those properties as security for the loans. Floyd, on the other hand, denies the loans all together. Given the elemental nature of these disputed facts, summary judgment was inappropriate. See McClellan, 895 So.2d at 897 (holding that genuine issues of material fact precluded summary judgment as to claim of a resulting trust).
IV. Conclusion
Because the Statute of Frauds does not prohibit the establishment of a resulting trust in the nature of an equitable mortgage by parol evidence and because there are genuine issues of material fact regarding whether a resulting trust in the nature of an equitable mortgage was created, the summary judgment entered by the trial court was improper. Accordingly, that judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Murdock, and Bryan, JJ., concur.

The DeVaney farm is also sometimes referred to in the record as "the McAfee farm."

We note that, in light of the recognition that a trust in the nature of an equitable mortgage may be proved by parol evidence, this Court has required that such proof be clear and convincing. See, e.g., Dorman, 284 Ala. at 391, 225 So.2d at 802 (" '[T]o entitle a complainant to relief in such cases, the testimony must be clear, consistent, strong, and convincing.' " (quoting Knaus v. Dreher, 84 Ala. 319, 319, 4 So. 287, 288 (1888) )). We make no comment at this time, however, regarding the application of this standard to the evidence before the trial court on summary judgment, and we do not mean to express any opinion as to the ultimate merits of the case.